Theodore B. JORDAN and Valerie M. Godley, on behalf of themselves and all other similarly situated, Plaintiffs,

v.

The HAWAII GOVERNMENT EMPLOYEES' ASSOCIATION, LOCAL 152, AFSCME, AFL–CIO, the Hawaii State Federation of Labor, the American Federation of State, County, and Municipal Employees, Mack H. Hamada, Chairman, Hawaii Public Employment Relations Board, John E. Milligan and James K. Clark, Board Members of the Hawaii Public Employment Relations Board, Defendants.

Civ. No. 78–0515.

United States District Court, D. Hawaii.

June 21, 1979.

James S. Campbell, Edwin L. Doernberger, Kent M. Keith, John R. Pingree, Honolulu, Hawaii, for plaintiffs.

Benjamin C. Sigal, Honolulu, Hawaii, for Hawaii Govt. Employees' Assn.; American Fed. of State, County & Municipal Employees & Hawaii State Fed. of Labor.

Charlotte E. Libman, Deputy Atty. Gen., Honolulu, Hawaii, for Hamada, Milligan & Clark.

### ORDER GRANTING SUMMARY JUDGMENT

SAMUEL P. KING, Chief Justice.

This case concerns the continuing effort, begun by Theodore B. Jordan, and later joined by Valerie M. Godley, plaintiffs herein, to challenge the computation of service fees deducted from the pay of all state employees, union and nonunion, pursuant to the Hawaii Collective Bargaining in Public Employment Act. Haw.Rev.Stat. § 89. Under Sections 89–4 and 5 of the Act, the exclusive bargaining agent for public employees, in this case the Hawaii Government Employees Association [hereinafter HGEA], must seek approval of its collective bargaining (service) fees from a board especially created to administer the Act's provisions, the Hawaii Public Employment Relations Board [hereinafter HPERB]. Once approved by HPERB, the fees are deducted from government employee paychecks by the State of Hawaii.

For more than four years, plaintiff Jordan, a retired nonunion public employee, has been challenging HPERB's certification of HGEA's service fees on the grounds that (1) HPERB is collecting union dues in addition to service fees and (2) HGEA is collecting and spending service fees for purposes not related to collective bargaining. No less than six decisions by HPERB have been appealed to the state circuit court by Mr. Jordan since 1974, three of which are now pending before the Hawaii Supreme Court.[1]

Plaintiff Godley, a nonunion government employee, joined Mr. Jordan in opposing a service fee increase sought by HGEA in November 1978. Plaintiffs now seek this Court's review of the service fee calculation process under 42 U.S.C. § 1983, alleging that HPERB officials, HGEA and two unions represented by HGEA (the American Federation of State, County, and Municipal Employees [hereinafter AFSCME] and the Hawaii State Federation of Labor [hereinafter HSFL]) have acted or conspired under color of state law to deprive them of constitutional rights. Plaintiffs contend that HPERB's failure to require adequate proof of HGEA's collective bargaining fees has caused the deduction of money from their pay without due process of law and, further, that they have been forced to provide support for union activities in the form of union dues deducted from their pay in violation of their First Amendment right to freedom of association.[2]

Defendants have moved to dismiss the complaint or, in the alternative, for summary judgment. Defendants raise several arguments in support of their alternative motions. They first contend, and this Court agrees, that plaintiff Jordan's action is barred by the doctrine of *res judicata.*

> [W]here [a] federal constitutional claim is based on the same asserted wrong as was the subject of a state action, and where the parties are the same, *res judicata* will bar the federal constitutional claim whether it was asserted in state court or not, for the reason that the state judgment on the merits serves not only to bar every claim that was raised in state court but also to preclude the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief.

*Scoggin v. Schrunk,* 522 F.2d 436, 437 (9th Cir. 1975) (*quoted in Red Fox v. Red Fox,*

---

1. The only state circuit court to review the "reasonableness" of HGEA's service fee petition affirmed HPERB's certification of the fees on all issues of proof and statutory construction raised by appellants except one relating to the appropriate allocation of staff salaries between service fee activities and other union activities. *Jordan v. Hamada,* Civil No. 52424 (1st Cir., decided March 30, 1978).

2. This right was explicitly recognized in *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1970) where it was held that a Michigan statute authorizing compulsory payments of a collective bargaining service charge equivalent to union dues gave rise to a cause of action for violation of the nonunion members' First Amendment right to freedom of association.

564 F.2d 361, 363 (9th Cir. 1977)).[3] Mr. Jordan has challenged the constitutionality of HPERB's certification of HGEA's fee petition in at least one Hawaii circuit court that has since rendered a decision;[4] thus, he is now precluded from reasserting those issues in this Court.[5]

Mrs. Godley's § 1983 claim for injunctive relief against the HPERB officials[6] must also fail under the common law doctrine of quasi-judicial immunity. Since *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), it has been well settled that judicial officials are

> not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.

*Id.* at 351. *See also Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This doctrine has been characterized by the Supreme Court as a "general principle of the highest importance to the proper administration of justice . . . ." *Bradley,* 80 U.S. (13 Wall.) at 347.

In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court recently reaffirmed the importance of the doctrine of absolute immunity to unfettered, impartial decision-making by extending its protection to quasi-judicial officials. In *Butz,* the Court conferred absolute immunity on a hearing examiner, a judicial officer, and a prosecuting attorney for the United States Department of Agri-culture who were charged with instituting unauthorized proceedings against the plaintiff in violation of his constitutional rights. The Court there found that "the functional comparability of their judgments to those of the judge" placed the officials in a "quasi-judicial" role. *Id.* at 511–12, 98 S.Ct. 2913 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). The Court held that "[a]bsolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." 438 U.S. at 512, 98 S.Ct. at 2914.

In the present case, HPERB performs many of the quasi-judicial duties described in *Butz.* It may issue subpoenas,[7] rule on proffers of evidence,[8] regulate the course of the hearing,[9] and make or recommend decisions.[10] *See Butz,* 438 U.S. at 513, 98 S.Ct. 2894. HPERB's purpose is to resolve disputes arising under Hawaii's Collective Bargaining in Public Employment Act.

Significantly, the instant plaintiffs also enjoy many of the specific safeguards against judicial misconduct that the *Butz* Court noted "tend to reduce the need for private damage actions as a means of controlling unconstitutional conduct." 438 U.S. at 512, 98 S.Ct. at 2914. The Board members are insulated from political pressure by six-year terms of appointment,[11]

---

**3.** "Appellant is not permitted to fragment a single cause of action and to litigate piecemeal the issues which could have been resolved in one action." *Scoggin,* 522 F.2d at 437 (quoting *Flynn v. State Board of Chiropractic Examiners,* 418 F.2d 668 (9th Cir. 1969)) (footnote omitted).

**4.** Plaintiffs' contention that *Solarana v. Industrial Electronics, Inc.,* 50 Haw. 22, 428 P.2d 411 (1967), bars the application of the doctrine of *res judicata* to cases pending appeal is without merit. *Solarana* was limited to " 'issues raised in a previous case which were * * * matters which a court expressly refused to determine.' " *Id.* at 28, 428 P.2d at 416. Here, none of plaintiffs' claims have been expressly excluded by a court.

**5.** Furthermore, plaintiff Jordan's retired status precludes this Court from providing him the prospective injunctive relief prayed for in the complaint. Having retired, he no longer receives a paycheck that is affected by HPERB's certification of service fees. Consequently, a prospective injunction against HPERB is not an appropriate form of relief.

**6.** Plaintiffs make no claim against HPERB for damages.

**7.** *Haw.Rev.Stat.* § 89–5(b)(5).

**8.** *Id.* § 91–10.

**9.** *Id.* § 89–5(b)(5).

**10.** *Id.* § 89–5(b).

**11.** *Id.* § 89–5(a).

exemption from civil service law requirements of periodic employment evaluations,[12] and the requirement that they hold no other public office or state job.[13] Moreover, state administrative law requires that HPERB utilize many of the same safeguards that are available in the judicial process. Contested cases are adversarial in nature;[14] a party is entitled to present his case by oral or documentary evidence;[15] the testimony and exhibits together with the pleadings constitute the exclusive record for decision;[16] and the parties are entitled to a written decision with separately stated findings of fact and conclusions of law.[17] Finally, a party who is dissatisfied with an HPERB decision may appeal to the state circuit court.[18] *See Butz,* 438 U.S. at 514, 98 S.Ct. 2894. In light of these safeguards, and the quasi-judicial role occupied by HPERB officials, this Court cannot but agree with the Supreme Court's conclusion in *Butz* that

> the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women.

*Id.* at 514, 98 S.Ct. at 2915.

Plaintiffs cite numerous cases holding that the doctrine of absolute immunity protects judicial or quasi-judicial officials only from damages and not equitable relief. This line of cases has been derived primarily from a Seventh Circuit civil rights decision, *Littleton v. Berbling,* 468 F.2d 389 (1972), *rev'd on other grounds sub nom. O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), and Judge Friendly's decision in *Law Students Civil Rights Research Council, Inc. v. Waldmond,* 299 F.Supp. 117 (S.D.N.Y.1969) (three-judge court), *aff'd on other grounds,* 401 U.S. 154,

91 S.Ct. 720, 27 L.Ed. 749 (1974). *Littleton* and *LSCRRC* are distinguishable from the case at bar.

*Littleton* involved a § 1983 class-discrimination suit seeking injunctive relief from the discriminatory application of state criminal laws on the basis of race by judicial officials of Cairo, Illinois. Plaintiffs there alleged that the State's attorney handled complaints and prosecuted cases "in a blatantly discriminatory and arbitrary manner." 468 F.2d at 411–12 (footnote omitted). After reviewing the history and purpose of the Civil Rights Statutes, the Seventh Circuit reversed the lower court's dismissal of the action, concluding that injunctive relief against judicial officials is permissible in situations involving such invidious discrimination. *See* 468 F.2d at 408. The court noted that "courts which have considered the issue have held that when a class-discrimination is alleged, judicial officers may be enjoined." *Id.*[19] Nevertheless, as the Seventh Circuit later noted in *Field v. Boyle,* 503 F.2d 774, 775–76 n. 2 (1974), the *Littleton* rationale was meant to be limited to a few "exceptional" situations. The instant case does not involve the "class-discrimination" situation contemplated by *Littleton.*

Plaintiffs' reliance on *LSCRRC v. Waldmond* is also misplaced. In LSCRRC, Judge Friendly considered whether the doctrine of judicial immunity protected New York State judges from a § 1983 action seeking to enjoin the state judiciary from approving allegedly unconstitutional registration questions for the New York bar exam. Having found the applicability of judicial immunity to an injunction to be unclear, the court based its opinion on the anticipated effect an injunction would have in that particular case.

12. *Id.*

13. *Id.*

14. *See id.* § 91–10(3).

15. *Id.* § 91–9(c).

16. *Id.* § 91–9(e).

17. *Id.* §§ 91–12, 89–5(a).

18. *Id.* § 91–14.

19. The court also noted that the Supreme Court had recently construed 42 U.S.C. § 1985(3) in *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) to require "invidiously discriminatory motivation" as an element of the cause of action.

The grant of injunctive relief in a case like this would not have the *in terrorem* effect on state judges that the threat of a subsequent damage action would have; rather, it would furnish a definitive ruling on a point of federal law for their future guidance . . . . 299 F.Supp. at 123. Unlike the case at bar, the injunction therein concerned the constitutionality of specific questions; thus, compliance involved nothing more than the elimination of those questions.

■ The injunction prayed for in the present case would declare past certification decisions of HPERB unconstitutional and order the Board to make no future decisions that would violate the plaintiffs' First Amendment right to refrain from political activities of the defendant unions. No specific question on a registration form or wording of a statute is at issue; instead, plaintiffs challenge the decision-making process of a quasi-judicial body. The effect of such an injunction would be to threaten HPERB with contempt for actions not susceptible to prior explication and manifestly a result of future judicial discretion.[20] This was not the design of Judge Friendly in *LSCRRC.*

Indeed, § 1983 cases subsequent to *Littleton* and *LSCRRC* have focused concern on the effects that equitable relief can have on unfettered decision-making by judicial officials. In *Cheramie v. Tucker,* 493 F.2d 586 (1974), the Fifth Circuit extended judicial immunity to plaintiff's § 1983 request that a decision of the state appellate court be declared unconstitutional. In response to plaintiff's assertion that the state court was not immune from injunctive relief, the court stated:

> There is indeed some authority recognizing [the] distinction between suits for damages and suits for purely equitable relief. Rarely in this line of cases, however, has there been any real interference with the discretionary functions of a judge.

*Id.* at 588 (footnotes omitted); *see Bilick v. Dudley,* 356 F.Supp. 945, 953 (S.D.N.Y. 1973); *Bramlett v. Peterson,* 307 F.Supp. 1311, 1322 (M.D.Fla.1969).

As in *Tucker,* the relief sought by plaintiffs herein contemplates the regulation of judicial functions of a clearly discretionary nature. HPERB must examine the submissions of HGEA and all intervening parties to determine whether proposed service fees for collective bargaining are reasonable. In so doing, the Board is confronted with contradictory assertions by both parties often requiring the exercise of judicial discretion to reach a final resolution.[21] Where, as here, the Board is required to choose between such conflicting interests, injunctive relief with its attendant contempt powers may pose as real a threat to impartial decision-making as a suit for damages. It is not unlikely that HPERB officials, having been once enjoined from making future certification decisions in violation of a non-union government employee's constitutional rights, will give undue consideration to non-union interests to avoid possible fine or imprisonment. The absolute immunity of "quasi-judicial" officials is meant to protect against just such a possibility.[22]

---

**20.** "There is a great difference between ordering an official not to do a particular act, measurable by objective standards, and in ordering him to exercise his discretion in a certain general way, measurable only by subjective standards." *Littleton,* 468 F.2d at 415 (Dillin, J. dissenting).

**21.** Significantly, the instant dispute is of a particularly contentious nature. For nearly five years it has been the subject of litigation in state court. Under such circumstances, any decision by HPERB would have "produced at least one losing party, who would 'accep[t] anything but the soundness of the decision in

explanation of the action of the judge.'" *Butz v. Economou,* 438 U.S. at 509, 98 S.Ct. at 2912 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) at 348, 20 L.Ed. 646): *see Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

**22.** *Cf. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978) (In a § 1983 action against the State of Alabama, the State had an Eleventh Amendment interest in being dismissed from the action in order to eliminate the danger of being held in contempt if it should fail to comply with the mandatory injunction.)

**1130**

■ All claims against the remaining defendants must fail unless it can be shown that the unions have acted under color of state law.[23] This Court is unpersuaded that the requisite state action exists in the instant case. Under Hawaii law, HGEA, as the exclusive bargaining representative of state employees, may submit a service fee request to HPERB.[24] If approved, the fee is deducted from government employees' salaries by the state and allocated to HGEA or whomever HGEA designates—in this case, AFSCME and HSFL. In this process, the unions do not act with state authority.

Plaintiffs assert two additional grounds in support of their contention that defendants have engaged in state action. Relying on *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), and *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), they initially contend that HGEA's application to HPERB was so clearly in violation of their constitutional rights that it assumed color of state law when approved by HPERB. In *Moose Lodge,* the discriminatory provision of a private club's charter became state action through a regulation of the Pennsylvania Liquor Commission that required all recipients of a liquor license to comply with their bylaws.

> Even though the Liquor Control Board regulation is neutral in its terms, the result of its application in a case where the constitution and bylaws of a club required racial discrimination would be to invoke the sanctions of the State to enforce a *concededly discriminatory* private rule.

407 U.S. at 178–79, 92 S.Ct. at 1974 (emphasis supplied). Thus, the State of Pennsylvania gave effect to a rule that was clearly in violation of Irvis' rights. Similarly, in *Shelley v. Kraemer,* a clearly discriminatory private agreement prohibiting the sale of a home to all non-Caucasians became state action when it was enforced by the Missouri Supreme Court.[25]

■ In the instant case, HPERB has not placed the state's imprimatur on a clear violation of the plaintiffs' constitutional rights. There is no allegation of any statement in HGEA's service fee application that the fees would be used for purposes other than collective bargaining. Plaintiffs contend only that HGEA's application failed to adequately explain how the service fees would be limited to collective bargaining. Such a failure, if true, would not, however, reveal a clear intent by HGEA to spend service fees for purposes other than collective bargaining. Absent a clear intent to violate constitutional rights, HGEA's service fee application cannot assume color of state law through HPERB certification. *See Moose Lodge,* 407 U.S. at 173, 92 S.Ct. 1965; *accord, Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357 n. 17, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

Plaintiffs' second argument asserts that state action occurred under the "state-involvement" theory presented in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), and clarified in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In *Burton,* where a private lessee who practiced racial discrimination leased space for a restaurant from a state parking authority in a publicly-owned building, the Court held that the state had so far involved itself in a position of interdependence with the restaurant that it was a joint participant in the enterprise. *Burton,*

23. Absent such a showing, plaintiffs' affidavits alleging conspiracy between HPERB, HGEA, AFSCME and HSFL cannot save the suit under § 1983 because, as the Ninth Circuit clearly stated in *Sykes v. State of California,* 497 F.2d 197, 202 (1974):

> Private persons cannot be held liable for conspiracy under the Civil Rights Statutes if the other conspirators are state officials who are themselves immune to liability under the facts alleged.

24. *See* Haw.Rev.Stat. §§ 89–4 and 5.

25. The Court in *Moose Lodge* noted: "*Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), makes it clear that the application of state sanctions to enforce such a rule would violate the Fourteenth Amendment." 407 U.S. at 179, 92 S.Ct. at 1974.

365 U.S. at 725, 81 S.Ct. 856. The "symbiotic relationship" required for state action was further defined in *Jackson* where an electrical utility company terminated the plaintiff's electricity in accordance with a termination policy that had been approved by the Pennsylvania Public Utilities Commission. The *Jackson* Court explained that, even where a business is heavily regulated, "the fact that the regulation is extensive and detailed" does not, by itself, convert the actions of the business into that of the state. 419 U.S. at 350, 95 S.Ct. at 453.

█ In the present case, HGEA's involvement with HPERB is far from that of a joint participant in an enterprise and significantly less than the state-regulated utility in *Jackson*. It does not occupy state property, nor is it a governmentally-protected monopoly. *See id.* at 351–52, 95 S.Ct. 449. The union has no connection with the state other than its application to HPERB for a collective bargaining service fee and its receipt from the state of the certified fees. These interactions with the state are not so extensive as to assume color of state law.

The notion that HGEA's fee petition is sufficient state involvement because HPERB specifically authorized and approved the petition must also be rejected.[26] In answer to a similar contention in *Jackson,* the Court declined to find state action where the Pennsylvania Public Utilities Commission had not ordered the use of the rate-termination procedure that halted plaintiff's electric service.

Approval by a state utility commission of such a request from a regulated utility, where the commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the commission into "state action."

419 U.S. at 357, 95 S.Ct. at 457; *see Abood v. Detroit Board of Education,* 431 U.S. at 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (Powell, J., concurring).[27]

As an example of action initiated by the state, the *Jackson* Court cited *Public Utilities Commission v. Pollack,* 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), wherein the District of Columbia Public Utilities Commission commenced on its own an investigation of the effects of piped music and determined that the practice was beneficial. 419 U.S. at 356–57, 95 S.Ct. 449. There, the decision to use the music was state action. In this case, HGEA devises its own plan for utilization of service fees. The union acts entirely on its own when it creates the fee petition and submits it to the Board. HPERB does not direct or in any way prescribe its contents.

> Respondent's [utility's] exercise of the choice allowed by state law where the initiative comes from it and not from the State, does not make its action in doing so "state action" for purposes of the Fourteenth Amendment.

419 U.S. at 357, 95 S.Ct. at 457 (footnote omitted). Accordingly, the import of *Jackson* is that a service fee petition devised by a private party is not state action.[28]

---

**26.** This argument differs from the state action theory asserted under *Moose Lodge* and *Shelley* in that it finds state action in any act involving the state's approval, whether or not that act is clearly unconstitutional.

**27.** *Cf. Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164–66, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (Decision of warehouse company to sell stored goods pursuant to New York statute did not assume color of state law where statute only permitted and did not compel sale); *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 594, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976) (Electric utility's program of providing light bulbs to customers, though approved by the Michigan Public Ser-

vice Commission, did not constitute state action where initiated by the utility and optional).

**28.** Plaintiffs also allege in their complaint that HGEA's expenditure of service fees for political purposes rather than collective bargaining constitutes state action. Implicit in this argument is the assumption that all expenditures of service fees received by HGEA after HPERB certification are made under color of state law. This Court finds no basis for such an extension of the concept of "state action." "Doctors, optometrists, lawyers, Metropolitan, and Nebbia's upstate New York grocery selling a quart of milk are all in regulated businesses, providing arguably essential goods and services, 'af-

Thus, there is not, under any theory, a "sufficiently close nexus between the State [of Hawaii] and the challenged action of . . . [HGEA] so that the action of the latter may be fairly treated as that of the State itself." *Jackson,* 419 U.S. at 351, 95 S.Ct. at 453; *see Moose Lodge,* 407 U.S. at 176, 92 S.Ct. 1965.

The remaining two defendants, AFSCME and HSFL, have engaged in purely private action outside the reach of 42 U.S.C. § 1983. Their only part in the certification process is to submit to HGEA their projected costs for collective bargaining. HGEA then includes this amount in its total fee application to HPERB. Indeed, AFSCME and HSFL cannot petition for service costs under the Hawaii Collective Bargaining Act because HGEA is the exclusive bargaining representative for Hawaii government employees.[29]

Having found HPERB immune from suit under 42 U.S.C. § 1983 and all other defendants to be acting without color of state law, this Court concludes that defendants' motion for summary judgment should be GRANTED.[30]

It is so ordered.

---

fected with a public interest.' We do not believe that such a status converts their every action, absent more, into that of a State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 354, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (footnote omitted).

**29.** *See* Haw.Rev.Stat. § 89–4.

**30.** Because the conclusions herein were based in part upon facts outside the contents of the pleadings, defendants' motion to dismiss must be DENIED.

Plaintiffs Jordan and Godley filed this suit as a class action. Because Godley is still employed by the State, she has standing to assert claims for both damages and injunctive relief. Jordan, however, has retired from government employment and has no standing to assert a claim for injunctive relief. *See* note 5 *supra.* Therefore, plaintiffs' request for class certification is DENIED without prejudice because they have not shown that their claims or defenses are typical of those of the class, Fed.R.Civ.P. 23(a)(3), or that they will "fairly and adequately protect the interests of the class." Fed.R. Civ.P. 23(a)(4).