773 F.2d 160
 Bernard T. SCOTT, Plaintiff-Appellant,
v.
Charles H. SCHMIDT, Jr., Individually and as Chairman of the
Illinois Racing Board; Ray H. Garrison, Thomas J. Garvey,
Farrel J. Griffin, Joseph Kellman, Cecil J. Troy, and Robert
G. Ward, all individually and as members of the Illinois
Racing Board, State of Illinois; David E. Hooper,
Individually and as Executive Secretary of the Illinois
Racing Board; Jewel N. Klein, individually and as counsel
for the Illinois Racing Board; Richard Garrett,
individually and as State Steward for the Illinois Racing
Board; and Douglas Sapper, individually and as Assistant
State Steward for the Illinois Racing Board, Defendants-Appellees.
 No. 84-1995.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 25, 1985.
Decided Sept. 17, 1985.
 
 John H. Bisbee, Macomb, Ill., for plaintiff-appellant.
 Kathryn A. Spaulding, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before BAUER and WOOD, Circuit Judges, and DOYLE, Senior District Judge.*
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 On January 8, 1980 an attempt was made to fix the tenth harness race at Fairmount Park, Illinois. Appellant Scott, driving Flying Scooter, finished sixth. On April 9, 1980, a Madison County, Illinois grand jury indicted Scott for accepting a bribe to finish fourth or worse in the race, a Trifecta race,[1] and for failure to report a bribe. Although Scott was eventually acquitted of the criminal charges, the Illinois Racing Board has continued to deny Scott the license required by statute to race in Illinois on grounds that he took a bribe and failed to report it. Scott brought suit in federal court against the Illinois Racing Board members, two Board stewards, one Board attorney, and the Board executive secretary. The suit charges that together and separately the defendants violated Scott's civil rights. The district court dismissed the suit on the pleadings. Scott appeals the dismissal. We affirm.
 
 I.
 
 2
 In 1980 Appellant Scott was a harness horse owner, trainer, and driver, licensed by the Illinois Racing Board. On April 9, 1980 a Madison County, Illinois grand jury returned a two count indictment against Scott for accepting and failing to report a bribe not to use his best efforts in the tenth race at Fairmount Park on January 8, 1980. On May 7, 1980, following the indictment but before trial, two stewards of the Illinois Racing Board, Richard Garrett and Douglas Sapper, supended Scott's occupation license for the remainder of 1980.[2]
 
 
 3
 Scott requested and received a Board hearing on May 23, 1980 to review the stewards' action. On June 6, 1980, after the hearing but before the full Board rendered a decision, the Madison County Circuit Court enjoined the enforcement of the stewards' order. Pursuant to this injunction Scott raced during 1980 and 1981 notwithstanding a June 19, 1980 Board affirmance of the stewards' order.
 
 
 4
 In August, 1981 Scott was acquitted on both criminal counts and a month later the Illinois Supreme Court reversed the circuit court's injunction order against the stewards' action. See Phillips v. Graham, 86 Ill.2d 274, 56 Ill.Dec. 355, 427 N.E.2d 550 (1981). The Board did not, however, initiate action to exclude Scott from racing during the remaining portion of the 1981 season.
 
 
 5
 In January, 1982, Scott telephoned the offices of the Illinois Racing Board regarding the procedure for applying for a 1982 license. According to the complaint, defendant David Hooper, executive secretary of the Board, told Scott that he (Hooper) and the Board thought Scott was guilty of taking the bribe notwithstanding his acquittal. Nevertheless Scott applied for a license. The stewards, defendants Garrett and Sapper, denied plaintiff's 1982 license application. Scott appealed to the Board and Board member Garrison, acting as hearing officer, presided over a de novo hearing on Scott's application. At the hearing Greg Lance, an admitted participant in the January 8 attempted fix, testified that Scott took $500 from him as a bribe to not use his best efforts in the tenth race. Lance's testimony was corroborated by a statement given by another admitted participant in the fix, Vernon Rodoni. Rodoni's corroborating statement was admitted into the record by stipulation. Scott testified on his own behalf denying the charges; Scott also called his groom Steve Szykzewski who testified that he did not know of the alleged meeting between Lance and Scott where Scott allegedly took the bribe. The transcript of the criminal proceedings was not available and not considered by the Board.
 
 
 6
 The full Board, upon review of the hearing record, found that Lance and Rodoni's testimony was credible and that Scott had accepted a $500 bribe to finish fourth or worse in the race on January 8, 1980. Accordingly, the Board denied Scott's 1982 application. A state circuit court and a state appeals court later affirmed the Board's denial. Scott did not seek review by the Illinois Supreme Court.
 
 
 7
 In 1983 Scott again applied for a license. A hearing was held, over which one of the Board members (presumably Garrison) presided. At this hearing evidence was presented on the issue of Scott's rehabilitation and fitness for a license. On review of the hearing record the full Board concluded that Scott had not shown rehabilitation and denied his application. Scott did not appeal this order.
 
 
 8
 In January, 1984 Scott again applied for a license. At the same time he filed the instant civil rights action in federal district court pursuant to 42 U.S.C. Secs. 1983 and 1985(2). The complaint alleges deprivation of various constitutional rights under the first, fifth, sixth, eighth, and fourteenth amendments. Scott seeks damages for his forty-day suspension in 1980 and for being denied a license in 1982 and 1983.[3] On June 6, 1984 the district court held that the suit was barred by the doctrines of res judicata and collateral estoppel; that the Racing Board members, stewards, and counsel were immune from suit, although Board executive secretary David Hooper was not; that Scott failed to state a claim under 42 U.S.C. Sec. 1985(2) because he did not allege the requisite class-based invidious discriminatory animus; that Scott failed to state a claim under 42 U.S.C. Sec. 1983 because he did not allege facts which establish a deprivation of due process; and that Scott's section 1983 first, fifth, sixth, and eighth amendment claims were frivolous. This appeal followed.
 
 II.
 
 9
 Scott's complaint contains two claims for relief: the first claim is made pursuant to title 42, section 1983 and the second pursuant to title 42, section 1985(2). On appeal Scott concedes that his second claim is deficient under section 1985(2) because it does not allege a class-based discriminatory animus, but rather a retaliatory motive: retaliation for Scott's success in obtaining the circuit court injunction against the enforcement of the original suspension order pending the outcome of the criminal proceedings. Scott asks this court to permit him to amend his pleadings and reallege his second claim pursuant to section 1983. Generally, motions for leave to amend pleadings are not properly raised in the first instance at the appellate stage. 6 C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL Sec. 1489, p. 449 (1971). Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure a party may amend his pleadings once as of right before a responsive pleading is served and thereafter by leave of the district court or written consent of the adverse party. Even after the district court has entered final judgment, a party may, before filing an appeal, seek leave to amend by first filing a motion to alter, set aside, or vacate the judgment pursuant to Rule 59(e) or Rule 60(b) and then requesting leave to amend pursuant to Rule 15(a). 6 C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL Sec. 1489, pp. 445-50 (1971). Scott failed to seek leave to amend his second claim at any point prior to filing his brief in this appeal; we consider his motion for leave to amend at this appellate stage to be untimely and it is denied.
 
 III.
 
 10
 The district court held that the Racing Board members, stewards, and counsel all enjoy absolute immunity from this suit because they were performing quasi-judicial acts when they participated in the proceedings wherein Scott's license was suspended and his license application was denied.
 
 
 11
 On appeal Scott concedes the general applicability of immunity to the Board members and counsel, but argues that absolute immunity should not be extended to the Board members and counsel in this case because the complaint alleges non-judicial acts, taken "in clear absence of all jurisdiction."[4] Relying principally on the Ninth Circuit case of Beard v. Udall, 648 F.2d 1264 (9th Cir.1981) (per curiam), Scott contends that the complaint focuses on non-judicial acts to the extent it alleges that the Racing Board members entered a prior agreement with the Board's attorney, who presented the case against Scott to the Board, to find him guilty. We do not read the complaint to make such an allegation.
 
 
 12
 Regarding the 1982 denial of Scott's license application the complaint alleges that the Board's executive secretary, David Hooper, told Scott prior to the hearing on Scott's application that the Racing Board members believed that Scott was guilty of taking and failing to report the bribe despite his acquittal of the charges in criminal court. Nowhere is there an allegation of any prior agreement between the Board members and the Board attorney.
 
 
 13
 Read liberally the complaint charges that the Board members held a prior belief or attitude toward the case.[5] But holding a prior opinion about a case is not a non-judicial act; indeed, it is no act at all. In Bradley v. Fisher, 80 U.S. 335, 20 L.Ed. 646 (1871) the Supreme Court stated that the applicability of judicial immunity to a judge is not "affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry." 80 U.S. at 347. A fortiori the predisposition of decision-makers is not the proper subject of judicial inquiry. Were we to permit actions against judges or those performing judicial functions merely on allegations that the decision-maker was predisposed toward a case we would open a floodgate of litigation from all those dissatisfied with a decision. Appellate process is the proper avenue for such dissatisfied litigants.
 
 
 14
 Scott also complains about the Board's 1983 denial of his application. In this regard the complaint merely summarizes the reasons the Board gave for its decision: its 1982 finding that Scott had taken and failed to report a bribe, and the lack of evidence showing rehabilitation. Nowhere is there any allegation concerning a pre-hearing agreement between the Board and the agency attorney or stewards or any other act which might arguably be considered non-judicial.[6]
 
 
 15
 Scott also asserts that the Board members and counsel are not immune because they acted in excess of their jurisdiction. We find no sensible development of this assertion in the brief and think there can be none. The Board has jurisdiction over all matters which concern horse racing in Illinois, ILL.ANN.STAT. ch. 8, paragraphs 37-2, 37-9 (Smith-Hurd 1985 pocket part); and, in particular, over the issuance, suspension, and denial of occupation licenses. ILL.ANN.STAT. ch. 8, p 37-15 (Smith-Hurd 1985 pocket part). All the actions of which Scott complains pertain to the suspension or denial of his occupation license. The complaint therefore does not concern any action of the Board members or counsel taken in excess of their jurisdiction.
 
 IV.
 
 16
 We now consider the sufficiency of the pleadings as they regard the two Board stewards (Garrett and Sapper) and the executive secretary (Hooper).
 
 
 17
 The complaint's only allegation respecting the Board stewards is that they suspended Scott's license pursuant to the criminal indictment. The complaint makes no allegation that the stewards acted with improper motive or intent in denying Scott his license or otherwise violated his constitutional rights. We see no constitutional violation in this action. Indeed the Illinois Supreme Court, in a thorough and thoughtful opinion, see Phillips v. Graham, 86 Ill.2d 274, 56 Ill.Dec. 355, 427 N.E.2d 550 (1981), upheld the constitutionality of the stewards' May 7 action suspending Scott.[7]
 
 
 18
 Scott also names the Board executive secretary David Hooper as defendant.[8] The complaint's only allegation regarding Hooper is that he told Scott prior to Scott's filing an application that he (Hooper) and the Racing Board believed that Scott was guilty of taking and failing to report a bribe. The mere utterance of this statement of belief to Scott does not infringe any of Scott's constitutional rights.[9] The Board, not Hooper, denied Scott's license applications; the secretary merely typed and issued the orders. The complaint fails to state a section 1983 claim against Hooper.
 
 
 19
 For the foregoing reasons the judgment dismissing Scott's suit against all defendants is AFFIRMED.
 
 
 
 *
 The Honorable James E. Doyle, Senior District Judge of the Western District of Wisconsin, is sitting by designation
 
 
 [1]
 A Trifecta race is the same as any other race from the horse's viewpoint, but not the bettor's. It is an added betting feature in which the bettor attempts to pick the first three horses in the order of finish. This type of race may be fixed by agreements that all but three of the drivers will finish in fourth place or further back, thus improving the bettor's chances for picking the winning threesome combination
 
 
 [2]
 There is real doubt about the truth of the complaint's assertion that the stewards suspended Scott's license. The Illinois Supreme Court, in its discussion of the same May 7 steward action, states that the stewards imposed the less serious penalty of excluding Scott from Illinois race tracks. Phillips v. Graham, 86 Ill.2d 274, 283-84, 56 Ill.Dec. 355, 359, 427 N.E.2d 550, 554 (1981). Exclusion is less serious than suspension because a person excluded may still race his horses on Illinois tracks, albeit through other owners, trainers, or drivers. Id. at 283, 56 Ill.Dec. 355, 427 N.E.2d 550. Because this case comes before us on a motion to dismiss for failure to state a claim we must assume the truth of the pleaded facts. Kugler v. Helfant, 421 U.S. 117, 125-26 n. 5, 95 S.Ct. 1524, 1531 n. 5, 44 L.Ed.2d 15 (1975). We therefore assume that the stewards suspended Scott, notwithstanding the Illinois Supreme Court's statements to the contrary. Our disposition of the case does not turn, however, on this factual distinction
 
 
 [3]
 In the trial court Scott also sought an injunction prohibiting the Board from acknowledging its prior orders or hearing certain types of evidence at the hearing on his 1984 license application. The district court viewed these fears as speculative and dismissed this portion of the complaint on mootness grounds. Scott has not appealed this portion of the district court's order
 As it turns out, in May, 1984 the Illinois Racing Board denied Scott's 1984 license application. In July, 1984 a Cook County circuit court affirmed the Board's decision. See Scott v. Illinois Racing Board, No. 84 L 51665 (July 22, 1985).
 
 
 [4]
 Because Scott does not challenge the general applicability of quasi-judicial immunity to Racing Board members and counsel we do not decide this issue. We note, however, that there are colorable arguments on both sides of the issue. In Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court extended the protective blanket of absolute immunity to federal agency officials who perform functions comparable to those of the judge and prosecutor: hearing examiners (administrative law judges), agency officials who decide to initiate or continue administrative proceedings, and agency attorneys who present the evidence to the hearing officers. Several courts, including several panels of this court, have extended Butz to state agency officials involved in adjudication of state regulatory matters. See, e.g., Trotter v. Klincar, 748 F.2d 1177, 1182 (7th Cir.1984) (immunity for Illinois Prisoner Review Board); Reed v. Village of Shorewood, 704 F.2d 943 (7th Cir.1983) (immunity for local liquor control commissioner); Stanley v. Indiana Civil Rights Commission, 557 F.Supp. 330 (N.D.Ind.1983) (immunity for Indiana Civil Rights Commission); Rosenthal v. State of Nevada, 514 F.Supp. 907, 913 (D.Nev.1981) (immunity for members of gaming control board and gaming commission); Morales v. Vega, 483 F.Supp. 1057, 1061-63 (D.P.R.1979) (immunity for members of a state labor grievance committee); Hamm v. Yeatts, 479 F.Supp. 267, 270-71 (W.D.Va.1979) (immunity for members of the Virginia Alcoholic Beverage Control Commission); Jordan v. Hawaii Government Employees Association, Local 152, 472 F.Supp. 1123, 1125 (D.Hawaii 1979) (immunity for members of the Hawaii Public Relations Board). On the other hand, a strong argument has been made that the adjudicatory system of many state agencies does not possess sufficient safeguards against arbitrary and biased decision making to warrant extension of quasi-judicial immunity and that courts should therefore be wary of extending Butz to state administrative agency officials. See Note, Quasi-Judicial Immunity of State Officials: Butz v. Economou's Distorted Legacy, 1985 U.Ill.L.Rev. 401; see also Mary and Crystal v. Ramsden, 635 F.2d 590 (7th Cir.1980) (refusing to extend quasi-judicial immunity to member of a juvenile detention camp disciplinary committee); Meyer v. Niles Township, Illinois, 477 F.Supp. 357 (N.D.Ill.1979) (refusing to extend quasi-judicial immunity to members of county public aid committee)
 
 
 [5]
 Technically the complaint does not allege that the Board members actually held this belief, only that the executive secretary told Scott that the Board members believed that he was guilty. Under liberal pleading rules, however, we will infer the former allegation from the latter
 
 
 [6]
 Even if we were to find that the complaint alleges a prior ex parte agreement between the Board and the counsel or the stewards, we would likely still grant immunity since we harbor some doubts whether the Ninth Circuit's Beard decision can be reconciled with Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The Ninth Circuit in Beard held that an ex parte decision between judge and prosecutor is a non-judicial act. The Supreme Court in Sparkman held that a judge's approval of an ex parte sterilization petition was a judicial act. The Ninth Circuit distinguishes Sparkman on grounds that Sparkman involved allegations of wrongful acts occurring in the courtroom while in Beard the ex parte communication occurred outside the courtroom. This is not a persuasive ground for distinguishing the cases. The Sparkman decision did not turn on the location of the act. The Court considered two factors in determining whether the judge's act was judicial: whether the function is normally performed by the judge and whether the parties dealt with the judge as judge. 435 U.S. at 361, 98 S.Ct. at 1107. Neither factor concerns the location of a judge's alleged violative act
 
 
 [7]
 Although we need not decide the issue we have some reservations about the district court's finding that the Board stewards are immune under the doctrine of quasi-judicial immunity. Board stewards are appointed by the Board and serve as Board representatives at all race meetings; they are also the Board's principal advisers on harness racing activities. 11 Ill.Adm.Code Sec. 1306.10. In this capacity stewards have the authority to make initial decisions on license applications, suspensions, and revocations. The stewards' function is not comparable to that of any of the federal agency officials found immune in Butz. Unlike the federal agency hearing officer the steward makes his decision without the benefit of a formal due process hearing. Thus there is more likelihood of error or bias in a steward's decision than a federal administrative law judge's. Nor does a steward perform only an adjudicatory function. He performs a prosecutorial function insofar as he initiates proceedings against individuals or companies by suspending or denying their licenses and an investigatory function insofar as he investigates charges. We need not decide whether the Board stewards are immune, however, since we dismiss the suit against the stewards on other grounds
 
 
 [8]
 The Board secretary is an employee of the Board with the ministerial duties of keeping records of all proceedings of the Board, and preserving all records, books, documents and other papers belonging to the Board. ILL.ANN.STAT. ch. 8, p 37-13 (Smith-Hurd 1985 pocket part). Because the executive secretary functions in a non-discretionary, ministerial role he does not enjoy absolute immunity. His role is like that of the court clerk who is charged with the ministerial duties of entering an order, filing papers, and notifying parties of scheduled hearings and court actions; and for such actions the clerk enjoys qualified but not absolute immunity. See Williams v. Wood, 612 F.2d 982, 985 (5th Cir.1980) (entering an order and notifying the parties is a routine duty for which a court clerk does not enjoy quasi-judicial absolute immunity)
 
 
 [9]
 To the extent an utterance affects someone's reputation it may infringe an aspect of constitutional liberty protected by the due process clause of the fourteenth amendment. See Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). But see Paul v. Davis, 424 U.S. 693, 701-10, 96 S.Ct. 1155, 1160-64, 47 L.Ed.2d 405 (1976) (reputation, standing alone, is not an aspect of fourteenth amendment liberty or property). See generally Wells and Eaton, Substantive Due Process and the Scope of Constitutional Torts, 18 Ga.L.Rev. 201 (1984). But since the complaint does not allege that Hooper expressed his belief in Scott's guilt to anyone but Scott, the complaint does not raise reputational issues