TRUST AND INVESTMENT ADVISORS,
INC., Plaintiff,

v.

Joseph H. HOGSETT, Secretary of State of
Indiana, and Miriam Smulevitz Dant,
Indiana Securities Commissioner, Defendants.

No. IP 92–C–334.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 8, 1993.

Thomas Withrow, O. Wayne Davis, B. Keith Shake, Henderson Daily Withrow & Devoe, Indianapolis, IN, for plaintiff.

Roy White, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, IN, for defendants.

## ENTRY

BARKER, District Judge.

The defendants have filed a motion to dismiss the plaintiff's complaint and a motion for attorney's fees. The parties have fully briefed those motions, and based on the Court's review of the record and the parties' filings, the motion to dismiss is GRANTED and the motion for fees is DENIED.

## I. Background

Trust & Investment Advisors, Inc. (hereinafter referred to as TIA) is a financial investment company. In early 1991, defendant Miriam Smulevitz Dant, the Indiana Securities Commissioner, initiated an administrative investigation of Robert W. Rousey, who was either an independent contractor for TIA (according to TIA) or a TIA employee (according to the defendants). Over time, Dant's investigation uncovered that Rousey had committed securities fraud and bilked Indiana investors out of approximately $300,-000. (Rousey was eventually convicted and

sentenced to serve a prison term of eight years.)

As part of Dant's investigation, Dant also investigated TIA; more specifically, whether TIA had failed to supervise Rousey's activities at TIA with due care. By the following year, Dant had completed her investigation, and on February 18, 1992, sent a letter to TIA's attorneys, in which, according to TIA's characterizations, Dant made certain "findings and conclusions" and accused TIA of failing to supervise Rousey with due care.[1]

TIA claims that an Administrative Complaint was thereafter filed, but not before Chief Deputy Commissioner Joan Moore Mernitz[2] had engaged in an *ex parte* review of the evidence gathered against TIA and issued an Order to Show Cause, stating that "grounds exist under the Indiana Securities Act, IC 23–2–1, to suspend or revoke the investment advisor registration of TIA ... and that this order is in the public interest." TIA also claims that Dant, adding injury to insult, publicly stated her conclusions about TIA's wrongful conduct, and in so doing, injured TIA's reputation and business.

In response, TIA filed this lawsuit against Dant and Hogsett under 42 U.S.C. § 1983, claiming that the defendants violated its constitutionally protected right to a full and fair hearing. In Count One of its complaint, TIA seeks a declaration that the defendants' actions were unconstitutional and invalid, an injunction prohibiting the defendants from further unconstitutional conduct, and attorney's fees "incurred by virtue of Defendants' wrongful actions complained of herein." In Count Two, TIA seeks money damages flowing from Dant's alleged "unconstitutional and illegal actions, and her public dissemination of same." Count Two is against Dant in her individual capacity only.

An administrative hearing before the appointed trier of fact, Raymond Hafsten, is currently pending.[3]

## II. Discussion

The defendants move to dismiss TIA's complaint on the grounds that defendant Dant is entitled to quasi-judicial immunity, citing *Butz v. Economu,* and that this court must abstain from interfering in the ongoing state proceeding, citing *Younger v. Harris.* In response to that motion, TIA argues that the defendants are not entitled to absolute immunity because judicial-like safeguards are not present; Count One seeks declaratory and injunctive relief only; Dant's actions were not "judicial acts," because "[s]he was the investigator"; and the Indiana Securities Act's grant of immunity is unconstitutional. TIA argues that neither are the defendants entitled to qualified immunity, because Count One is for declarative and injunctive relief and Dant had to have known that she was violating TIA's clearly established rights. TIA also asserts that Claim One against Hogsett survives the defendants' motion to dismiss under Ind.Code §§ 23–2–1–15 and 23–2–1–16(e), and that since there is no adequate state remedy and Count One is for monetary relief, abstention in this instance is improper.

### A. Immunity

■ Absolute immunity, "justified and defined by the functions it protects and serves, not by the person to whom it attaches," *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988), shields a judge from damages liability for actions taken in the exercise of his or her judicial capacity. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).[4] This

---

1. The defendants characterize that letter as "nothing more than a 'demand letter'" mailed in the context of settlement negotiations.

2. TIA claims that the deputy commissioner was acting on behalf of Joseph H. Hogsett, Indiana's Secretary of State, and Dant.

3. TIA does not allege that Dant is to be the adjudicator at the administrative hearing; in fact, TIA concedes that Dant, even before the Administrative Complaint was filed, stated her intent to appoint a hearing officer to preside over the administrative hearing.

4. Absolute immunity does not rest on an individuals status as a prosecutor or administrator—the Supreme Court has taken a "functional approach" to immunity, *Burns,* — U.S. at ——, 111 S.Ct. at 1939. The entitlement to absolute immunity is grounded in "the nature of the functions [the official] was performing...." *Mitchell v. Forsyth,* 472 U.S. 511, 521, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, courts "do not

sweeping form of immunity has been extended to executive branch officials who perform quasi-judicial functions, including those who preside over administrative adjudicatory proceedings, *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) or perform prosecutorial functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *accord Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

■ A state prosecutor performing investigative or administrative functions, is only entitled to assert qualified immunity, not absolute immunity. *Houston v. Partee*, 978 F.2d 362, 365 (7th Cir.1992) (citing *Burns* and *Auriemma v. Montgomery*, 860 F.2d 273, 277–8 (7th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989).[5] The defense of qualified immunity protects government officials performing discretionary functions unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Therefore, in determining whether an official is entitled to qualified immunity, a court must determine whether the challenged actions were objectively reasonable in light of the rights of the parties involved and whether the rights allegedly violated were clearly established at the time of events in question. *Hedge v. County of Tippecanoe*, 890 F.2d 4 (7th Cir.1989); *Alvarado v. Picur*, 859 F.2d 448 (7th Cir.1988).

■ The court accepts (and agrees with) TIA's characterization that Dant was performing as "Dant the investigator" in this instance. However, Dant's investigation and the dissemination of her conclusions about whether TIA had failed to supervise Rousey with due care are acts cloaked in qualified immunity. *Buckley v. Fitzsimmons*, 952 F.2d 965 (7th Cir.1992) (prosecutor who investigated the criminal defendant and announced his findings at a press conference entitled to qualified immunity). The claim that Dant broadcasted her conclusions regarding TIA's guilt is, at best, one for defamation, which under *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), is not a constitutional wrong. *Buckley v. Fitzsimmons*, 952 F.2d at 967; *see Somerset House, Inc. v. Turnock*, 900 F.2d 1012 (7th Cir.1990). Although TIA claims that Dant prejudged TIA and failed to afford TIA a full and fair hearing before coming to the conclusion that TIA had committed a violation of law, that claim also fails to state a constitutional wrong. *Somerset House, Inc. v. Turnock*, 900 F.2d at 1015–18. TIA has not, as of the date of this Entry, been adjudicated guilty or liable, nor has TIA been fined or sanctioned. TIA has simply not been deprived of a significant protected property interest at the hands of the Indiana Securities Division or Commissioner Dant.

In investigating whether TIA failed to properly supervise Rousey, Dant was carrying out one of the duties she was obligated to perform as the Indiana Securities Commissioner. She had no reason, therefore, to believe that those actions violated TIA's constitutional rights. TIA has failed to allege facts which, if proven, would demonstrate that Dant's actions were objectively unreasonable or violated TIA's clearly established rights. Dant is thus entitled to qualified immunity. Because Count Two fails to state a claim upon which relief can be granted against Dant individually, it must be dismissed.

■ In the alternative, the court concludes that Dant is entitled to absolute immunity. Three factors have particular importance in determining whether absolute immunity bars a suit:

decide whether a *prosecutor* is entitled to absolute immunity; we decide whether a prosecutor *performing a particular function* is entitled to absolute immunity." *Houston v. Partee*, 978 F.2d 362, 366 (7th Cir.1992) (citing *Juriss v. McGowan*, 957 F.2d 345, 348 (7th Cir.1992)).

**5.** There is a presumption that qualified immunity is sufficient to protect government officials in the exercise of their duties, and a defendant who seeks the protection of absolute immunity must therefore bear the burden of showing that absolute immunity is justified for the function in question. *Houston v. Partee*, 978 F.2d 362, 365 (7th Cir.1992) (citing *Burns* ).

(1) whether a historical or common law basis exists for granting an official absolute immunity from suit for performing a particular function;

(2) whether performing the function poses special risks of vexatious litigation; and

(3) whether sufficient safeguards exist to prevent abuses of power.

*Houston v. Partee,* 978 F.2d 362, 367 (7th Cir.1992); *Mother Goose Nursery Schools, Inc. v. Sendak,* 770 F.2d 668, 671 (7th Cir. 1985). Based on these factors, to the extent Dant was a hearing officer and is being sued for acts committed in the performance of her duties as a state official engaged in the adjudication of state regulatory matter, the court concludes that Dant is entitled to quasi-judicial immunity. *Mother Goose Nursery Schools, Inc. v. Sendak,* 770 F.2d at 671 (Indiana Attorney General entitled to quasi-judicial immunity when reviewing contracts pursuant to Ind.Code § 4–13–2–14); *see Reed v. Village of Shorewood,* 704 F.2d 943, 952 (7th Cir.1983); *Coghlan v. Chapman,* No. 91–2325, 1992 WL 97937 *3, 1992 U.S.App. LEXIS 11129 at *8–9.

█ TIA does not allege that there was or is any agreement between Dant and Raymond Hafsten. Read liberally, the complaint charges that the administrative trier of fact (either Dant or Hafsten) holds a pre-hearing belief or attitude about TIA's culpability. "But holding a prior opinion about a case is not a non-judicial act; indeed, it is no act at all." *Scott v. Schmidt,* 773 F.2d 160, 164 (7th Cir.1985). As stated in *Scott:*

> *A fortiori* the predisposition of decision makers is not the proper subject of judicial inquiry. Were we to permit actions against judges or those performing judicial functions merely on allegation that the decision-maker was predisposed toward a case[,] we would open a floodgate of litigation from all those dissatisfied with a decision. Appellate process is the proper avenue for such dissatisfied litigants.

*Id.* To the extent that Dant is alleged to be the final decision maker, either as the trier of fact or the official who approves or disapproves the trier of fact's findings, the court finds that Dant is entitled to quasi-judicial immunity. *Id.* Count Two must be dismissed on this basis as well.

### B. Abstention

█ The *Younger* principle applies only if the following factors exist: (1) judicial or judicial-in-nature state proceedings are ongoing; (2) those proceedings implicate important state interests; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *AFCME v. Tristano,* 898 F.2d 1302, 1305 (7th Cir.1990); *see Middlesex Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). As the court stated in *Tristano:*

> [Each time] the *Younger* principle has been extended from the facts of the original case, it is apparent that the concerns of comity and federalism underlying *Younger* are present. When a federal court is deciding whether *Younger* abstention is appropriate in a particular case, it must determine that *both* the relief sought and the ongoing state proceedings warrant the application of the *Younger* principle.

*AFCME v. Tristano,* 898 F.2d at 1305 (citing *Middlesex Ethics Comm.*). *Younger* abstention has been applied when litigants challenge state administrative proceedings that involve important state interests. *Id.*

█ It is clear that, if granted, the relief TIA seeks in Count One—an injunction preventing the state administrative hearing from moving forward and a judicial declaration that the Indiana Securities Division has and is violating TIA's constitutional rights by conducting such a hearing—would unduly interfere with the ongoing state proceedings. It is equally clear that Indiana has a strong state interest in the regulation of investments by and impacting on Indiana citizens. While it is true that an injunction intended to resolve a constitutional issue not before an administrative proceeding "falls outside the domain of *Younger*," *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 528 (7th Cir.1988), all of the constitutional issues TIA raises in this court have also been raised in the state administrative proceeding. In any event, a judicial review of the hearing administrator's decisions may be sought in Indiana's Circuit

or Superior Court, and thereafter in Indiana's Court of Appeals. *See* Ind.Code 23–2–1–20; *Bolerjack v. Forsythe,* 461 N.E.2d 1126 (Ind.Ct.App.1984).

Accordingly, this court concludes that, as to Count One of TIA's complaint, *Younger* abstention is warranted. That count must therefore be dismissed.

### C. *Attorney's Fees*

 The defendants have also moved for attorney's fees, stating, "This entire lawsuit is a massive violation of Rule 11 ... this action is not well grounded in fact or law and is clearly instituted to harass the defendants herein in the conduct of their official duties." In response, after briefing the merits of its complaint, TIA parries:

> Defendants' request for fees and costs is a sad example of an apparently new breed of litigation tactics. It is indeed unfortunate that the price to be paid by counsel seeking to obtain fundamental due process for a citizen is the incurring of a scurrilous personal attack. If Defendants hoped to deter thorough, competent and zealous representation by counsel, they are again sadly mistaken.

Getting in the last word, the defendants cite a portion of that passage in its Reply brief and respond with the allegation that "[r]ather than the deference [sic] a competent, [sic] and zealous representation suggested by TIA, it is the ill founded and misguided nature of this litigation which led to the Defendants request for fees."

While TIA's complaint is subject to dismissal, there is no evidence that TIA filed its complaint in bad faith or with the intent to harass the defendants. This is a somewhat complex case which raises questions in areas of law and jurisdiction that do not always lend themselves to clear-cut answers, discernible in advance of judicial discussion and resolution. Both parties advanced viable arguments on behalf of their respective positions, and the court finds no violation of Rule 11 standards.[6]

---

**6.** The court is more concerned, however, with counsels' failure to comply with basic standards of civility towards one another, given the tenor of the briefs filed by each side, and thus directs counsel to review the recently promulgated and adopted Standards of Civility which apply to all practitioners with the Seventh Circuit. *See* Final Report on the Committee on Civility of the Seventh Federal Judicial Circuit, p. 2A ("We will practice our profession with a continuing aware-

### III. Conclusion

In accord with the above discussion, the court hereby GRANTS the defendants' motion to dismiss: Count One is dismissed on the basis that Dant is entitled to immunity and Count Two on the basis of abstention. Defendants' motion for attorney's fees is DENIED.

It is so ORDERED.

### JUDGMENT

In accord with Court's Entry in the above named action, JUDGMENT is hereby ENTERED against the plaintiff and this case is DISMISSED. Each of the parties is to bear its respective costs in this case.

It is so ORDERED.

ness that our role is to advance the legitimate interests of our clients. In our dealings with others we will not reflect the ill feelings of our clients. We will treat all other counsel ... in a civil and courteous manner, not only in court, but also in all other written and oral communications.") A copy on that document is available from the Clerk of the Court or in the Court's library.