David J. Noonan, Tighe, Curhan & Piliero, Boston, Mass., for plaintiffs.

Allen Roffman, Chelsea, Mass., Trustee.

Charles R. Bennett, Jr., Riemer & Braunstein, Boston, Mass., for defendant/debtor.

**In re Alan M. SULLAWAY, Debtor.**

**John F. McNULTY and McNulty Realty Associates, Plaintiffs,**

v.

**Alan M. SULLAWAY, Defendant.**

**Bankruptcy No. 83–2526–L.**
**Adv. No. 86–1067.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 5, 1986.

## MEMORANDUM DENYING DISCHARGE

HAROLD LAVIEN, Chief Judge.

■ I find for the debtor on Counts 6 and 7, as they deal with an alleged misrepresentation of financial condition of the debtor; namely, the ownership of the Derby Street property. 11 U.S.C. § 523(a)(2) requires that when dealing with a fraud relating to financial condition, it must be based on a statement in writing. There is no such false writing. This requirement of writing is of long standing in both the statutes and the cases, *Obrist v. Christensen*, 337 F.2d 220 (9th Cir.1964); *Johnston v. Johnston*, 63 F.2d 24 (4th Cir.1933). The only writing is a handwritten list of properties on which 274 Derby Street is listed with Max Sullaway, the debtor's father, clearly listed as owner. There are alleged oral representations by the debtor that his father would transfer title some time the following summer, but the only written statement clearly shows the property, unconditionally, in the name of Max Sullaway and makes no other representations in regard to it. McNulty had the title searches made and took mortgages on all the other

properties that the debtor claimed to own, but took no title search or mortgage on the Derby Street property and testified that he took, instead, a general guarantee by the debtor. The plaintiff has been unable to provide the Court with sufficient proof of a false written statement by the debtor.

■ I find that the creditor under Counts 1 and 8 has shown by clear and convincing evidence that discharge should be denied under 11 U.S.C. 727(a)(4)(A). The debtor knowingly and fraudulently in, or in connection with the case, made a false oath when he filed his Schedules and Statement of Affairs under penalty of perjury. 28 U.S.C. § 1746. All other counts were waived in open court prior to the trial.

The debtor's testimony concerning the Bridge Street Properties, Inc. was rather incredulous. The property was previously owned by a corporation with Mr. Ahola as sole shareholder and was located at 336–340 Bridge Street, Salem. The property interested the debtor and so, for no reason that he could offer, Mr. Ahola, who was not a relation and merely an acquaintance, gave him a half interest in the corporation. Then, when the McNulty deal came up on March 15, 1982, Ahola gave the debtor his 3,750 shares, making the debtor the sole shareholder for an unrecorded lease of the premises with an option to repurchase (the lease was just short of 7 years so that no recording was necessary). The debtor deeded the property from the corporation for no consideration so that he could give McNulty a mortgage. No consideration was paid to the corporation and the debtor testified that there was no agreement to recovery of the property to either the corporation or Aloha after the mortgage. There was a substantial fire in 1982, which was settled after the involuntary was filed, for $115,000. During the years 1982 and 1983, Ahola provided the funds, $1,100–$1,200 a month, to make mortgage payments on the Bridge Street Property. The debtor claimed this was not rent or income, but was to be deducted from the option price if and when it was executed. The following false answers appear on the Schedules and

Statement of Affairs, as of the date of the Involuntary, November 2, 1983, were:

Subsection (c) asked for interest in insurance and was answered: Hutton Life Ins., uncertain—no mention of the fire loss which occurred in 1982 prior to the involuntary petition and not settled and paid until after the filing. Subsection (t) Stocks and interests in unincorporated ... companies. The answer was, Standard Motor Products, Inc., uncertain, but no mention of 7,500 shares in Bridge Street Properties, Inc.

As to the Statement of Affairs, filed by the debtor. 2.(c) Have you been in partnership with anyone or engaged in any business during the six years immediately preceding the filing of the original petition herein? (If so, give particulars, including names, dates, and places). Answer: I entered into an agreement to acquire McNulty Chevrolet, but never received GMAC or General Motors approval and was unable to conclude the transaction—no mention of his involvement in Bridge Street Properties, Inc. 2.(e) What amount of income have you received from other sources during each of these two years (Give particulars, including each source, and the amount received therefrom). Answer: Rental income from Gloucester cottage; approximately $3,000 per year—no mention of $1,100 to $1,200 a month received from Ahola on Bridge Street.

14.(a) & (b) Losses. Have you suffered any losses from fire, theft, or gambling, during the year immediately preceding the filing of the original petition herein? (If so, give particulars, including dates, names, and places, and the amounts of money or value and general description of property lost). Answer: Motor vehicle fire in Connecticut. Insurance settled for $8,000 approximately—no mention of fire to Bridge Street property and which had an ultimate insurance recovery of $115,000.

(b). Was the loss covered in whole or part by insurance? (If so, give particu-

lars.) Yes—see above. No mention of insurance covering fire loss.

Because of the volume of filings and the need for an expeditious and economical bankruptcy administration, the Court, the trustee, and the creditors must be able to rely on the Schedules and Statement of Affairs, as having been prepared with scrupulous accuracy and honesty. Since a discharge is a privilege and not a right, *U.S. v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the strict requirement of accuracy is a small quid pro quo. The successful functioning of the Bankruptcy Act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. *In re Slocum*, 22 F.2d 282, 285 (2d Cir.1927); *see, Duggins v. Heffron*, 128 F.2d 546 (9th Cir.1942).

The First Circuit in *In re Mascolo*, 505 F.2d 274 (1st Cir.1974), set forth the rationale for denying a discharge where the debtor has failed to list potential guide posts to an analysis of the debtor's financial history. The case involved closed bank accounts that reputedly never had more than $350 in them.

> Once it reasonably appears the oath is false, the burden falls on the bankrupt to come forward with evidence that he has not committed the offense charged. *Shanberg v. Saltzman*, 69 F.2d 262 (1st Cir.1934). *See, also, American National Bank v. Rainquet*, 323 F.2d 881 (10th Cir.1963). The trier of fact may rely upon reasonable inferences as well as direct evidence. Thus, the trier may infer fraudulent intent from an unexplained false statement. *See In the Matter of Kaufhold*, 256 F.2d 181 (3d Cir. 1958); 1A J. Moore & J. Mulder, Collier on Bankruptcy ¶ 14.25, at 1336 (King ed. 1974).

The only extenuating evidence offered was the debtor's statement that the stock was of little or no value, no explanation was offered for not including the insurance and, as to the income from Ahola relative to Bridge Street, an unbelieved claim, it was to be applied to the option which might never be exercised.

In the absence of extenuating circumstances, the referee was entitled to infer that the statement was fraudulent. *See, Diorio v. Kreisler-Borg Construction Co.*, 407 F.2d 1330 (2d Cir.1969); *Aronofsky v. Bostian*, 133 F.2d 290 (8th Cir. 1943).

*In re Mascolo*, p. 277 *supra*.

 It is true that omission of an irrelevant matter or of property having no value is not necessarily fatal. *See, In re Tabibian*, 289 F.2d 793 (2d Cir.1961); *Willoughby v. Jamison*, 103 F.2d 821 (8th Cir.), *cert. denied*, 308 U.S. 588, 60 S.Ct. 111, 84 L.Ed. 492 (1939). But *Mascolo's* false statement does not fall into that narrow category. Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions. *See, Metheany v. United States*, 365 F.2d 90 (9th Cir.1966). The possibility of preference or fraudulent transfer makes an omission material. *Keeble v. Sulmeyer*, 290 F.2d 127 (9th Cir.1961). Therefore, knowing and fraudulent omission of a bank account, whether or not it is closed at the time of filing, warrants the denial of discharge. *See Avallone v. Gross*, 309 F.2d 60, 61 (2d Cir.1962). Referring to the omission of stocks and salary received several years before a voluntary filing where there was no suggestion that either was on hand at the time the petition was filed, Judge Swan has written:

> 'It cannot be doubted that the creditors are entitled to inquire into what property has passed through the bankrupt's hands during a period prior to his bankruptcy. . . . we think that wide latitude must be accorded to such an examination, and that the materiality of the false oath will not depend upon whether in fact the falsehood has been detrimental to the creditors.'

*In re Mascolo*, pgs. 277 & 278, *supra*. *See, also, In re Mazer*, 1 B.C.D. 363, 3 C.B.C. 65 (Bankr.S.D.N.Y.1975).

That is particularly relevant to this case where the entire Bridge Street transaction calls for the closest scrutiny by the trustee.

Discharge is denied under Counts 1 and 8 of the amended complaint, the debtor having knowingly and willfully made a false oath in his Schedules and Statement of Affairs.