**In re Percy & Gloria JOHNSON, Debtors.**

**SOFT SHEEN PRODUCTS, INC., and Luster Products, Plaintiffs,**

**v.**

**Percy & Gloria JOHNSON, Defendants.**

**Bankruptcy No. 86 B 18392.**
**Adv. No. 87 A 00140.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 24, 1988.

Memorandum Opinion July 27, 1988.

Michael J. Philippi, Gregory A. Friedman, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for plaintiff Soft Sheen Products, Inc.

Louis B. Christopher, Christopher, White & Associates, Chicago, Ill., for defendants Percy & Gloria Johnson.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This adversary proceeding comes before the Court on the amended complaint of Soft Sheen Products, Inc. ("Soft Sheen")

and Luster Products ("Luster") objecting to the discharge of debtor/defendants Percy Johnson and Gloria Johnson for violations of Sections 727(a)(4)(A), (a)(5) of the Bankruptcy Code.[1] For the reasons set forth below, the Court having considered all the pleadings, evidence adduced at trial by way of testimony and exhibits, does hereby sustain Soft Sheen's objections to discharge against Percy Johnson but denies the objections to discharge and hereby grants discharge to Gloria Johnson.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I), (J).

## II. FACTS AND BACKGROUND

Soft Sheen is engaged in the manufacture and sale of beauty and hair care products. Luster is engaged in the business of distributing beauty and hair care products. Percy Johnson and Gloria Johnson are husband and wife who resided in the City of Chicago. Both were owners of Southwest Beauty Supply, Inc., ("Southwest"), which engaged in the sale and distribution of beauty supply and hair care products, both at wholesale and retail from several locations in Chicago. Percy Johnson and Gloria Johnson were sole shareholders and officers of Southwest. Southwest filed a separate, but related, Chapter 7 proceeding in 1985. Soft Sheen was the holder of a state court judgment entered on June 18, 1985, against Southwest, Percy Johnson and Gloria Johnson in the amount of $389,525.09 plus costs and attorneys' fees. Luster was an unsecured creditor of Percy Johnson and Gloria Johnson, holding a claim in the amount of $47,237.02. Percy Johnson and Gloria Johnson filed their individual Chapter 7 bankruptcy petition on November 21, 1986. On February 17, 1987, Soft Sheen and Luster filed an adversary proceeding against Percy Johnson and Gloria Johnson objecting to discharge under section 727(a)(4)(A).

The substance of the original complaint was that Southwest was the alter ego of Percy Johnson and Gloria Johnson. The complaint further alleged that from 1980 to the date of the filing of the petition, Percy Johnson and Gloria Johnson purchased on account from Soft Sheen a wide array of beauty and hair care products which they resold to the public. Soft Sheen alleged that the purchases on credit were never intended to be repaid by Percy Johnson and Gloria Johnson; that Percy Johnson and Gloria Johnson converted proceeds of sale of the goods from Soft Sheen and diverted proceeds to other family members for the purpose of defrauding Soft Sheen and other creditors of Percy Johnson and Gloria Johnson; and that Percy Johnson and Gloria Johnson knowingly and fraudulently provided misleading and false information in connection with the instant bankruptcy proceeding regarding their assets.

On March 21, 1988, an amended complaint was filed adding a count based on section 727(a)(5) claiming that the debtors, despite repeated requests, failed to explain the loss of over $400,000.00 worth of beauty supply products which they obtained from Soft Sheen. Percy Johnson and Gloria Johnson, in both their original answer and answer to the amended complaint, denied the substantive allegations relating to the objections to discharge. The case was tried and evidence taken on June 2 and 3, 1988.

## III. TESTIMONY AND EVIDENCE ADDUCED AT TRIAL

Soft Sheen's principal witness was Chondus Smoot ("Smoot") its credit manager,

---

**1.** At the time of trial, Luster elected not to proceed. Accordingly, only Soft Sheen prosecuted the action.

Although the amended complaint is erroneously captioned with reference to "dischargeability of debt," a separate form of relief under Section 523 of the Bankruptcy Code, the gravamen and substance of the two count amended complaint invokes sections 727(a)(4)(A), (a)(5) and seeks relief by way of objections to the discharge of both Percy Johnson and Gloria Johnson.

who met with Percy Johnson on July 12, 1983. Smoot requested the meeting with Percy Johnson to reevaluate the account for credit worthiness, generally observe the establishments and the business in operation. Smoot and Percy Johnson went to several locations in Chicago. According to Smoot's testimony, Percy Johnson represented that he owned three of the facilities visited plus another location. Percy Johnson advised Smoot that he was expanding his business and intended to purchase additional locations. Pursuant to Smoot's request, Percy Johnson furnished a Southwest financial statement, dated May 31, 1983. Smoot did not take subsequent action to verify the accuracy of the unaudited financial statement. Based on Smoot's observations at the various locations, Percy Johnson's oral representations, and Southwest's financial statement, Soft Sheen continued to ship merchandise on open account in excess of $364,000.00. Smoot testified that in his opinion had he known that Percy Johnson and Gloria Johnson owned only two stores, Soft Sheen would not have given the amount of credit that was extended. In Smoot's opinion two stores could not generate the volume of business required to service the Soft Sheen indebtedness. Smoot also testified that he was advised by Percy Johnson that Southwest was doing three times the volume of any other Soft Sheen customer.

Percy Johnson testified as an adverse witness during Soft Sheen's case in chief. He had been in the beauty supply business since 1974 and approximately one month before trial got out of the business and surrendered the premises commonly known as the "Beauty Hut" to its landlord together with what small remaining inventory was then on hand. The Beauty Hut business was not referenced in the original schedules and statement of affairs filed by the Johnsons. The Beauty Hut was disclosed in an amended schedule of assets filed in March 1987 after the first meeting of creditors. He recalled the substance of the Smoot inspection in July of 1983 but did not recall discussion of credit terms. He testified that one of the store locations subsequently burned down in December 1983. He further testified that another store location was sold to his daughter sometime after Smoot's visit in 1983. He did not remember discussing any expansion plans at the July meeting with Smoot and had no business records because same had been stolen from one of the business locations after Southwest filed bankruptcy in 1985.

Percy Johnson admitted that the bankruptcy schedules filed in the instant case listed in excess of one million dollars in debt for unsecured claimants, but testified that he could not have owed that much and that some of the scheduled liabilities were not correctly listed. Moreover, he testified that the value of the inventory and the amount of liabilities were not correctly listed on Southwest's schedules. He stated that the remaining inventory on hand when the Southwest petition was filed was sold by the trustee. Johnson testified that after Soft Sheen refused to extend further credit in 1984, he sold off the remaining inventory and paid other creditors.

He testified further that the Beauty Hut location had been opened in 1982 or 1983. Johnson claimed that the Soft Sheen inventory was not given to either his son, who operated the Beauty Hut with him until approximately one month before trial, nor to his daughter to whom he sold one of the disclosed store locations in 1983. He admitted that the aggregate liability of both himself, Gloria Johnson and Southwest in July 1983 was around one million dollars in contrast to the May 31, 1983, balance sheet for Southwest listing same slightly in excess of $189,000.00. He also admitted that at the time the financial statements were furnished to Smoot no disclosure was made of the aggregate one million dollar liability.

David R. Herzog ("Herzog") testified for Soft Sheen. Herzog was appointed trustee in the Southwest case in September 1985. After the various Southwest premises were secured, Herzog related that same were burgled. Herzog had the existing inventory of Southwest inspected and appraised. During the course of a second burglary after which some stolen inventory was returned, all business records on the premis-

es were stolen and never recovered. Herzog testified that this made it impossible for him as trustee of Southwest to fully and properly investigate its assets, liabilities and to determine whether or not appropriate actions to recover assets of debtors' estate should be filed.

Herzog testified relative to a third burglary of one of the premises which prompted an emergency auction sale which produced in excess of $29,000.00 of sale proceeds from the inventory then on hand. He further testified that the schedules of assets and liabilities in the Southwest case appeared to be identical to those filed by the individual debtors in the case at bar. Although Herzog had suspicions, there was no proof that the missing records or burglary were attributable to Percy Johnson, Gloria Johnson, or former employees of Southwest. On cross-examination, Herzog admitted that the various locations were in a high crime area. In Herzog's experience, it was unusual for thefts to occur of business records as opposed to salable inventory.

The only witness who testified for the defense was Percy Johnson. He testified that the principal focus of the Southwest business had been wholesale sales and that whatever he had ordered on credit from Soft Sheen had been sent as requested prior to his conference with Smoot. He was the largest customer of Soft Sheen or at least among their top ten customers with principal sales in Chicago. He last received merchandise on account from Soft Sheen in May 1984. Business had fallen off 55 to 60 percent because Johnson was no longer able to obtain Soft Sheen products on credit. He estimated that the inventory on hand, at his cost, in September 1985 when Southwest filed for bankruptcy was in excess of $200,000.00.

He testified that over the years, numerous burglaries and break-ins had occurred at which times inventory was stolen in various quantities. He claimed that all Soft Sheen inventory was sold in the normal course of business. He could not recall how much inventory he had on hand in 1984 but admitted that at the time of the filing of the Southwest bankruptcy there was more than $200,000.00 on hand in contrast to the schedules in that case listing $56,000.00 for inventory. He further admitted that there was no inventory shown as scheduled in his personal bankruptcy. He did not recall any business records having been stolen in any of the other burglaries.

Percy Johnson testified regarding an attempted work out arrangement with Soft Sheen. He sought further credit extensions to be made and goods shipped in 1984. After a May 1984 meeting, Johnson made partial payments on account but the goods from Soft Sheen did not arrive as he understood were to be delivered.

In rebuttal, Smoot testified concerning two May 1984 meetings he had with Percy Johnson and other Soft Sheen representatives. As a result, in May 1984 an inventory was taken of goods on hand of Soft Sheen products at one of Percy Johnson's stores in an amount slightly in excess of $46,000.00. According to Smoot, the attempted negotiations for a work out failed between Percy Johnson and Soft Sheen because Percy Johnson could not furnish adequate collateral to warrant further extensions of credit in light of the past delinquencies. Moreover, the written terms of the proposed work out agreement were rejected by Percy Johnson who never mentioned the amount of the then approximate one million dollar aggregate liability still owed by the Johnsons and Southwest. Johnson explained that although he had paid other creditors before paying on Soft Sheen's account business was moving so fast that he was not quite sure as to exactly what transpired. Because the work out proposal negotiations were not fruitful, Soft Sheen refused to extend any further credit and supplies to Percy Johnson and Gloria Johnson.

## IV. SUMMARY OF THE ARGUMENTS

Soft Sheen claimed that the elements of section 727(a)(4)(A) had been proven by clear and convincing evidence because Percy Johnson made a false oath in the schedules originally filed in November 1986.

The original schedules did not disclose the debtors' ongoing interest in the Beauty Hut business. Soft Sheen claimed that section 727(a)(4)(A) was also violated by Percy Johnson's actions in turning over the Beauty Hut location and its remaining inventory on hand to its landlord rather than his trustee in bankruptcy. Soft Sheen further argued that the extensions of credit coupled with Johnson's admitted aggregate liabilities substantially in excess of those shown on the 1983 financial statement was a further fact demonstrating his fraud. Furthermore, the coincidental fire loss at one location and the sale of another store to his daughter for nominal consideration were further evidence of wrongdoing.

Soft Sheen next contended that a clear and convincing showing under section 727(a)(5) was made by Johnson's failure to provide a satisfactory explanation for their affairs given the insufficiency of their assets to meet their liabilities as scheduled. Viewed as a whole, Soft Sheen claimed that Percy Johnson's testimony offered no coherent explanation of what happened.

In closing, Soft Sheen raised a claim of an alternative cause of action under section 727(a)(7) because of the evidence regarding the break-ins and stolen inventory and records. Soft Sheen also argued that the evidence supported a finding of nondischargeability under section 523(a)(2) because of Percy Johnson's failure to mention the actual aggregate liabilities which were in fact substantially greater than those disclosed on the 1983 financial statement submitted to Soft Sheen.

Defense counsel for Percy Johnson and Gloria Johnson in closing argument took the blame for the errors, omissions and admitted misrepresentations on the schedules and statement of affairs. Although no testimony was offered during the course of the trial, defense counsel for the first time in closing argument contended that the schedules were prepared by his paralegal and that both the 1985 schedules for Southwest as well as for the instant individual case were mistakenly signed by Percy Johnson and Gloria Johnson, who did not carefully review same. Counsel argued that all assets were properly turned over to Southwest's trustee. Counsel further argued that suspicions and inferences were insufficient to bar discharge and Soft Sheen failed to prove a prima facie case.

## V. DISCUSSION

The burden of proof on the objections to discharge is on Soft Sheen as prescribed by Federal Rule of Bankruptcy Procedure 4005. The two-count amended complaint invokes sections 727(a)(4)(A), (a)(5) which provide as follows:

*Discharge*

(a) The Court shall grant the debtor a discharge, unless—

.   .   .   .   .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

.   .   .   .   .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a)(4)(A), (a)(5).

Although Soft Sheen made reference in pleadings filed responsive to the Court's final pretrial order and in closing argument that the evidence showed violations of section 727(a)(7) as well as a dischargeability cause of action under section 523(a)(2), at no time before the Court took the case under advisement did Soft Sheen move pursuant to Federal Rule of Bankruptcy Procedure 7015, incorporating Federal Rule of Civil Procedure 15(b), to amend the pleadings to conform to the evidence. Accordingly, because no amendments to the pleadings have been sought, the Court need not consider or decide these issues even if those separate causes of action could be deemed to have been tried by implied consent of the parties.

The provisions denying a debtor discharge are construed liberally in favor of the debtor and strictly against the creditor. Moreover, the court in *In re White*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986) noted:

Section 727 is the heart of the fresh start provision of bankruptcy law which provides relief to the poor but honest debtor who has tried his best to pay his creditors. (citations omitted) Section 727 is the vehicle through which the Court can preclude abusive debtor conduct. (citations omitted).

*White* at 744.

### A. *Section 727(a)(4)(A)*

■ A debtor will be denied a discharge under Section 727(a)(4)(A) of the Bankruptcy Code when he knowingly and fraudulently makes a false oath or account in connection with the case. In this case, Percy Johnson testified that the schedules he verified in 1986 were incorrect. In addition, the evidence is clear that the interest in the Beauty Hut business was omitted from the original schedules and not disclosed until amendments were filed in March 1987.

The filing of false schedules with material omissions or misrepresentations with an intent to mislead creditors and the trustee as to the debtors actual financial condition constitutes a false oath prohibited under section 727(a)(4)(A). *In re McDonald,* 16 B.R. 621, 623 (Bankr.S.D.Fla.1981). The subject matter of a false oath is material and sufficient to bar discharge, "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property." *In re Chalik,* 748 F.2d 616, 618 (11th Cir. 1984). The purpose of section 727(a)(4)(A) is to ensure that debtors provide reliable information to those with an interest in the administration of the estate. *In re Ingle,* 70 B.R. 979, 983 (Bankr.E.D.N.C.1987). The requisite intent under section 727(a)(4)(A) may be inferred from circumstantial evidence. The Court can infer from continuing concealment and nondisclosure the requisite fraudulent intent. Reckless indifference to the truth is sufficient as well.

In *Ingle,* the Court held the debtor's failure to list a sixteen-foot boat on his schedule of assets was a fraudulent concealment under section 727(a)(2) and a knowing and fraudulent oath under section 727(a)(4)(A). The debtor testified that he thought his wife had title to the boat in her name. The Court there found that the debtor's failure to check was reckless indifference to the truth. *Ingle* at 983.

In the case at bar, Percy Johnson's failure to accurately schedule his liabilities and his failure to disclose his continuing and long pre-existing interest in the Beauty Hut business is likewise a knowing and fraudulent oath under section 727(a)(4)(A). It is a debtor's duty to fully disclose assets so that any question can be resolved. All debtors are under a duty when they seek relief under the Bankruptcy Code to make full disclosure of the nature and extent of all their assets and liabilities. The failure to list the Beauty Hut was a sufficient, material omission. There was no evidence adduced to indicate that the failure to disclose that property interest was inadvertent. Even if the extent of Percy Johnson's interest in the Beauty Hut was unknown or if he was unsure of how to list or value his interest, he had a duty to disclose his interest in that property at the time the schedules were filed.

■ Defense counsel's attempt to take the blame for the inaccuracies in the originally filed schedules by claiming an interoffice proofreading error is insufficient. Defense counsel's closing arguments are not evidence. His arguments cannot absolve the ultimate responsibility borne by Percy Johnson who is a competent adult and experienced businessman. Percy Johnson should have carefully read the schedules to make sure they were as complete and accurate as possible before signing and filing. Moreover, there is nothing in the record to excuse the failure to immediately disclose the Beauty Hut assets at the time the case was filed. There was no evidence of mitigating facts to support any finding of inadvertence or inattention. *See In re Cook,* 40 B.R. 903, 906 (Bankr.N.D.Ia.1984). The concealment of the Beauty Hut business asset and the failure to accurately list liabilities owed provides ample grounds for

denial of discharge under section 727(a)(4)(A).

There is a compelling need for complete honesty and disclosure on the part of a debtor. *In re Sullaway,* 66 B.R. 320, 322 (Bankr.D.Mass.1986) explained as follows:

> Because of the volume of filings and the need for an expeditious and economical bankruptcy administration, the court, the trustee, and the creditors must be able to rely on the Schedules and Statement of Affairs, as having been prepared with scrupulous accuracy and honesty. Since a discharge is a privilege and not a right, *U.S. v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the strict requirement of accuracy is a small quid pro quo. The successful functioning of the Bankruptcy Act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. *In re Slocum,* 22 F.2d 282, 285 (2nd Cir.1927); *see, Duggins v. Heffron,* 128 F.2d 546 (9th Cir. 1942).

*Sullaway* at 322.

### B. *Section 727(a)(5)*

■ Under this section, the Court should grant a debtor a discharge unless the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. This section is broadly drawn and clearly gives a court the power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss or disappearance of assets. A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *In re Martin,* 698 F.2d 883, 888 (7th Cir. 1983). A debtor's explanation must consist of more than "a vague, indefinite and uncorroborated hodge podge of financial transactions." *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966).

Percy Johnson made a blanket statement that the inventory was sold from 1984 until the bankruptcy petition was filed and the proceeds used to pay other creditors. The schedules filed in 1986 admit in excess of one million dollars of unsecured debt but only $12,500.00 in assets. Percy Johnson's uncorroborated testimony that the inventory sold between 1984 and the time of the filing of the case was used to pay creditors other than Soft Sheen, is an insufficient and inadequate self-serving statement. The schedules of assets and liabilities filed in 1986 in this case showing a negative net worth of over one million dollars show a vastly different picture from that reflected in Southwest's balance sheet dated May 31, 1983. Based on the 1983 financial statement for Southwest, Percy Johnson and Gloria Johnson, as its sole stockholders, had an equity interest in the corporation stock alone in excess of $237,000.00.

Although the ultimate burden of proof lay with Soft Sheen as the party objecting to discharge, Percy Johnson failed to come forward with a minimally credible explanation in light of the facts of this case. The Court finds Percy Johnson's testimony less than credible. The change in financial condition, from a positive net worth in excess of $200,000.00 in 1983 in Southwest stock to a negative net worth in excess of one million dollars in 1986, requires much more of an explanation than Percy Johnson offered.

### C. *Gloria Johnson*

■ The Court finds it most significant that the co-debtor, Gloria Johnson, was not called as a witness. Accordingly, the Court is unable to find that she was knowingly involved in any fraudulent concealment or failure to explain the loss of assets. The record is devoid of any evidence to show that Gloria Johnson was actively involved in the transactions complained of by Soft Sheen. Although there was evidence that she worked behind the counter in the Southwest business, received a salary and owned shares of stock in that company, those facts coupled with her signature and her husband's signature on the joint bankruptcy petition is not sufficient proof for so drastic a punishment as a denial of discharge. In a recent case the Seventh Circuit Court of Appeals held under similar facts that the bankruptcy court has the discretion to grant a discharge to a spouse of a business debtor who signed her name

to a joint petition but who took no active part in her husband's business. *In re Suttles,* 819 F.2d 764, 766 (7th Cir.1987).

The Bankruptcy Code was meant to discharge only an honest debtor from his or her debts. *Matter of Garman,* 643 F.2d 1252, 1257 (Fed.Cir.1980). The Bankruptcy Code is to be liberally applied to protect debtors in cases where there is no intent to violate its provisions. Federal Rule of Bankruptcy Procedure 4005 makes it clear that the ultimate burden of proof is on the objecting creditor. Soft Sheen never called Gloria Johnson to the witness stand to explain disposition of the missing assets, the enormous change in financial condition or anything about her involvement in the transactions with Soft Sheen.

■ Accordingly, for purposes of section 727(a)(4)(A) there was no clear and convincing evidence of any fraudulent intent on Gloria Johnson's part. Moreover, Soft Sheen did not establish by a preponderance of the evidence its cause of action against her under section 727(a)(5). The Court will not impute a lack of credibility or fraudulent intent to Gloria Johnson from her husband's testimony as a means to satisfy Soft Sheen's burden of proof. Mere speculations, suspicions or inferences of possible culpability and wrongdoing are insufficient to meet an objecting creditor's burden of proof. The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor. *In re Shebel,* 54 B.R. 199, 204 (Bankr.D.Vt.1985).

## VI. CONCLUSION

For the foregoing reasons, the Court denies debtor Percy Johnson a discharge but grants debtor Gloria Johnson a discharge.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

## MEMORANDUM OPINION

This matter comes to be heard on a motion pursuant to Federal Rule of Civil Procedure 59(e) and Federal Rule of Bankruptcy Procedure 9023 to amend the Court's Memorandum Opinion and Order dated June 24, 1988, filed by Soft Sheen Products, Inc. ("Soft Sheen"). For the reasons stated below the Court will not amend the Memorandum Opinion and Order and accordingly denies the motion.

## I. FACTS AND BACKGROUND

After the trial conducted in this adversary proceeding, the Court entered its Memorandum Opinion and Order on June 24, 1988, denying debtor Percy Johnson a discharge and granting debtor Gloria Johnson a discharge. The Court did not address the applicability of 11 U.S.C. § 523(a)(2) because Soft Sheen failed to move to amend the pleadings pursuant to Federal Rule of Civil Procedure 15(b), incorporated by Federal Rule of Bankruptcy Procedure 7015. Soft Sheen first made reference to a section 523(a)(2) claim in pleadings filed in response to the Court's final pretrial order and in arguments made by counsel at trial.

Soft Sheen's arguments are two-fold. First Soft Sheen contends that under Rule 15(b) a formal amendment is not required especially in the absence of an objection. Alternatively, Soft Sheen requests that its pleadings be amended to conform with the evidence adduced at trial.

## II. DISCUSSION

### A. *Federal Rule of Civil Procedure 15(b)*

Rule 15(b) provides in relevant part:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues ...

Fed.R.Civ.P. 15(b).

The intent of Rule 15(b) is "to provide the maximum opportunity for each claim to

be decided on its merits rather than on procedural niceties." *Matter of Prescott,* 805 F.2d 719, 725 (7th Cir.1986) quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir.1982)). In *Prescott* the court found that the bankruptcy judge acted within his discretion in admitting evidence on an issue that had not been raised in the original complaint. In determining whether the pleadings had been amended, the court looked to whether the issue had been tried by the express of implied consent of the parties. The court noted that an indication of implied consent was when those issues not raised by the pleadings are presented without objection by opposing counsel.

In the case at bar, the attorney for Percy and Gloria Johnson never formally objected to the section 523(a)(2) claim before or at trial and has not objected thereto in his response to Soft Sheen's motion. Thus, the Court finds that the section 523(a)(2) claim was tried by implied consent. Accordingly, the Court will rule thereon despite the lack of a proposed amended complaint pleading the specifics of that statutory cause of action.

In addition, the Court notes that pursuant to *Scott v. Schmidt,* 773 F.2d 160, 163 (7th Cir.1985), Soft Sheen is able to amend its pleadings after trial. The *Scott* court stated that a party may seek leave to amend the pleadings by filing a Rule 59(e) or Rule 60(b) motion then requesting leave to amend pursuant to Rule 15(b). Soft Sheen has timely moved to amend the judgment under Rule 59(e) and has moved to amend its pleadings pursuant to Rule 15(b). Thus, the Court will rule on the section 523(a)(2) claim.

### B. *11 U.S.C. § 523(a)(2)*

Although the Court will consider the section 523(a)(2) claim, the Court concludes that the evidence adduced at trial did not establish that the debt owed to Soft Sheen is nondischargeable under that section. Soft Sheen did not specify whether it was proceeding under section 523(a)(2)(A) or 523(a)(2)(B). Thus, the Court will address both sections in light of the evidence.

Sections 523(a)(2)(A) and 523(a)(2)(B) provide in pertinent part:

a) A discharge under . . . this title does not discharge an individual debtor from any debt—

   .    .    .    .    .

2) for money . . . or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud . . .

    (B) use of a statement in writing—

      (i) that is materially false;

      (ii) respecting the debtor's or an insider's financial condition;

      (iii) on which the creditor to whom the debtor is liable . . . reasonably relied; and

      (iv) that the debtor caused to be made or published with intent to deceive . . .

11 U.S.C. § 523(a)(2)(A), (a)(2)(B).

### C. *11 U.S.C. § 523(a)(2)(A)*

In order to except a debt from discharge under section 523(a)(2)(A) a creditor must establish three elements: 1) the debtor obtained the money, services, property or credit through representations either knowingly false or made with such reckless disregard for the truth as to constitute willful misrepresentation; 2) the debtor possessed an intent to deceive; and 3) the creditor actually and reasonably relied upon the false representation. *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985). A creditor seeking an exception to discharge under section 523(a)(2) must sustain its burden by clear and convincing evidence. The discharge provisions of section 523 are construed strictly against a creditor and liberally in favor of a debtor. *In re Pochel,* 64 B.R. 82, 84 (Bankr.C.D.Ill.1986).

The elements of reasonable reliance by the objecting creditor and actual fraudulent intent by the debtor are critical to the creditor's burden. The evidence adduced at trial established the requisite elements regarding Percy Johnson's fraudulent conduct and intent, as well as Soft Sheen's reliance thereon. Soft Sheen's reliance, however, was not reasonable. Smoot's lim-

ited initial contacts with Percy Johnson and the subsequent failure to independently verify any of the representations before the additional credit and goods were extended clearly shows the reliance was not reasonable.

The deteriorating credit relationship between the parties, coupled with Soft Sheen's concerns about its delinquent account with Percy Johnson should have raised a sufficient red flag to cause Soft Sheen to take some action to independently verify what Percy Johnson represented to Smoot. In particular, Percy Johnson's representations of his ownership of real estate, multiple retail and wholesale business sales outlets, and his growing and expanding business should have evoked enough skepticism to warrant further investigation and determination of the accuracy of at least some of the facts before additional credit was extended on the delinquent and large account. On the contrary, Soft Sheen made further credit extensions and took no action to verify Percy Johnson's representation until after attempted workout negotiations failed and broke down approximately one year later. Therefore, Soft Sheen's reliance on Percy Johnson's representations was not reasonable. Thus, Soft Sheen's debt will not be held nondischargeable under section 523(a)(2)(A) as to either Percy Johnson or Gloria Johnson.

### D. *11 U.S.C. § 523(a)(2)(B)*

In order for Soft Sheen to sustain a claim pursuant to section 523(a)(2)(B) it must prove by clear and convincing evidence that both Percy Johnson and Gloria Johnson: 1) made a statement in writing; 2) that is materially false; 3) respecting their financial condition; 4) made with the intent to deceive and 5) on which Soft Sheen reasonably relied. 11 U.S.C. § 523(a)(2)(B) *Matter of Bogstad,* 779 F.2d 370, 372 (7th Cir. 1985); *In re Bonnett,* 73 B.R. 715, 717 (Bankr.C.D.Ill.1987). The first four elements were clearly proven against Percy Johnson by the evidence summarized in the Court's Opinion dated June 24, 1988. However, the Court finds that Soft Sheen did not reasonably rely on the financial statement furnished by Percy Johnson. Smoot

admitted on the witness stand that he did not take any action whatsoever to verify the accuracy of the unaudited financial statement before the additional credit was extended and more goods were shipped. For this reason and the other facts relating to the section 523(a)(2)(A) claim discussed above, the Court is unable to find that Soft Sheen's reliance on the financial statement was reasonable. *In re Gallagher,* 72 B.R. 830, 836 (Bankr.N.D.Ind.1987). Accordingly, the debt owed to Soft Sheen will not be held nondischargeable pursuant to section 523(a)(2)(B) as to either Percy Johnson and Gloria Johnson.

### E. *Discharge of Gloria Johnson*

█ Soft Sheen further requests that the Court deny Gloria Johnson a discharge. The Court refused to deny Gloria Johnson a discharge stating that it was "unable to find that she was knowingly involved in any fraudulent concealment or failure to explain the loss of assets." Memorandum Opinion dated June 24, 1988, at 366. Soft Sheen alleges that Gloria Johnson had the burden of coming forward with evidence to explain the missing assets and the change in financial condition. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983) held that for purposes of sections 727(a)(3) and 727(a)(5) the creditor has the initial burden of coming forward with evidence to establish its prima facie case. Once that burden is met, the debtor must then come forward with evidence of a credible explanation. The burden of proof and persuasion always rested with Soft Sheen under Federal Rule of Bankruptcy Procedure 4005.

Soft Sheen failed to establish a prima facie case against Gloria Johnson. Although she was available at all times during the trial, Soft Sheen failed to call her as an adverse witness to establish a prima facie case against her. Soft Sheen's tactical trial error of failing to call Gloria Johnson to the stand to obtain the same admissions it got from her husband does not satisfy the burden as to her. Thus, Gloria Johnson did not have to come forward with an explanation when she was never asked a question. The facts that she held office in, owned stock in, and worked behind the

counter in a Southwest Beauty Supply outlet do not clearly and convincingly establish that she was knowingly involved in any of the fraudulent conduct proven against Percy Johnson or that she failed to explain the loss of her assets to meet her liabilities.

Moreover, Gloria Johnson's alleged alter ego status with Southwest Beauty Supply Inc., shown by evidence consisting of a state court pleading signed by her attorney, is insufficient to meet Soft Sheen's burden as to her. Soft Sheen simply failed to present any evidence that Gloria Johnson actively engaged in any fraudulent conduct or that it reasonably relied on anything she did. Soft Sheen did not establish its prima facie case against Gloria Johnson under sections 523(a)(2)(A), 523(a)(2)(B), 727(a)(4)(A) or 727(a)(5). Satisfaction of the requisite burden of proof is required against each party. Proof meeting the burden as to one party does not necessarily meet the burden as to another.

Soft Sheen argues that the case at bar is distinguishable from that of *In re Suttles*, 819 F.2d 764 (7th Cir.1987). The Court relied on *Suttles* in support of its decision to grant Gloria Johnson a discharge. The Seventh Circuit has stated that the Bankruptcy Code "should be liberally applied to protect the [debtor] only in those cases where there is no intent to violate its provisions." *Matter of Garman*, 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). While it is true that the wife in *Suttles* took no active part in her husband's business, the court found the record devoid of the wife having any knowing involvement in the fraudulent transfers or concealments of her husband. Like the *Suttles* court, this Court is unable to determine from the evidence presented at trial that Gloria Johnson actively participated in any wrongdoing. This Court, therefore, is unwilling to find that Soft Sheen has met its burden of proof based on mere speculations of possible wrongdoing and her purported signature on the bankruptcy petition, schedules and statement of affairs. Not once during the course of the trial did Soft Sheen show proof of Gloria Johnson's actual fraud. Accordingly, the Court will not deny Gloria Johnson's discharge.

### III.  CONCLUSION

For the foregoing reasons, the Court hereby denies Soft Sheen's Motion to amend the Memorandum Opinion and Order dated June 24, 1988, to include a denial of discharge to Gloria Johnson and a finding of nondischargeability of the debt to Soft Sheen pursuant to Sections 523(a)(2)(A) and 523(a)(2)(B) of the Bankruptcy Code.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.