In re Angel L. GONZALEZ, Debtor.

**Caterpillar, Inc., Plaintiff,**

v.

**Angel L. Gonzalez, Defendant.**

**Bankruptcy No. 02–12541–BKC–RAM.
Adversary No. 02–1288–BKC–RAM–A.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 16, 2003.

Juan C. Zorrilla, Miami, FL, for Debtor.

Bruce A. Weihe, Fort Lauderdale, FL, for Caterpillar, Inc.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Debtor should be denied a discharge under the provisions of 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), or (a)(5).

In 1981, the Debtor/Defendant, Angel L. Gonzalez, started a sole proprietorship known as Universal Service Company. Universal purchased Caterpillar construction equipment and parts from Caterpillar dealers and resold them to its customers. Most of Universal's customers were in Central and South America, although it did have some customers based in the United States.

Sometime prior to 1993, Caterpillar prohibited its dealers from selling original Caterpillar parts to Universal. Mr. Gonzalez and Universal responded in 1993 by filing an anti-trust action against Caterpillar alleging that Caterpillar had blacklisted Universal and was monopolizing the parts market. After three years and a jury trial that lasted almost two months, the jury found that Caterpillar had interfered with Universal's customers and suppliers, but that interference was justified and not intentional. Accordingly, Caterpillar was found to be not liable.

In February, 1997, the magistrate in the anti-trust action recommended that Caterpillar be awarded taxable costs against Mr. Gonzalez/Universal and a co-plaintiff, Godix Equipment Export Corporation, with the taxable costs to be shared equally by Mr. Gonzalez/Universal and Godix. Mr. Gonzalez did not like the award of costs and Caterpillar did not like the costs being shared between Universal and Godix, so both parties objected to the magistrate's recommendation. The District Judge adopted the magistrate's recommendation on September 22, 1999, holding that the

taxable costs awarded to Caterpillar should be shared between Universal and Godix.

Both Caterpillar and Mr. Gonzalez appealed the cost judgment. The Eleventh Circuit rejected the appeals and, on November 18, 2000, the District Court entered its final judgment allocating approximately $171,000 of the final costs to Mr. Gonzalez and Universal.

In May, 1997, Caterpillar filed two separate federal lawsuits against Mr. Gonzalez and Universal, one in New Jersey and one in West Virginia. The West Virginia case was dismissed with prejudice on the merits by the District Court. The New Jersey case was transferred to the Southern District of Florida. In that case, Caterpillar alleged that Mr. Gonzalez and Universal infringed on Caterpillar's trademarks and sold after-market parts as original Caterpillar parts. This case is sometimes referred to as the "infringement case".

In October, 1997, Mr. Gonzalez' wife, Maritza Gonzalez, formed Construction Equipment Services, Inc. ("CESI"). At the end of 1997, Mr. Gonzalez shut down Universal and sold Universal's parts inventory, at cost, to CESI for approximately $393,000. Mr. Gonzalez also sold Universal's remaining machinery, equipment, and office supplies and furniture to CESI for Mr. Gonzalez' estimate of their fair market value of approximately $21,000.

CESI opened for business in January, 1998. CESI operates out of the same warehouse as Universal because the warehouse is owned by Mr. and Mrs. Gonzalez. When CESI opened for business, Universal's signs were replaced with CESI's signs. Mrs. Gonzalez is the sole shareholder of CESI. Mr. Gonzalez is not an officer, director, or shareholder of CESI, and he has never had signature authority over any of CESI's bank accounts. Mr.

Gonzalez worked as a "consultant" or "executive" for CESI.

Mr. Gonzalez did not conceal the shutdown of Universal, the transfer of Universal assets to CESI, or his wife's ownership of CESI. In fact, this information was disclosed to Caterpillar in a deposition on June 28, 1999, in the infringement case. Caterpillar responded to this news by filing a motion for leave to amend the infringement complaint by adding CESI as a party.

On July 23, 1999, mediation was held in connection with the infringement case. Mr. Gonzalez attended the mediation on his own behalf. In addition, he appeared on behalf of CESI with the authority of his wife, the owner of CESI. Mr. Gonzalez offered some of CESI's parts inventory to Caterpillar in an attempt to settle the case. Caterpillar refused the settlement proposal.

In February of 1999, the Internal Revenue Service audited Mr. Gonzalez and Universal for the 1996 and 1997 tax years. Following the completion of the audit, Mr. Gonzalez discarded Universal's books and records through 1997. Mr. Gonzalez testified that he destroyed Universal's books and records in October or November of 1997 because the business had been defunct for two years, he did not intend to challenge the IRS findings, and an IRS auditor told him that he was not required to keep the books and records if he did not intend to challenge the audit.

In mid–2000, another mediation was held at the direction of the Court of Appeals. Mr. Gonzalez again offered to settle the case in exchange for parts. Caterpillar once again rejected the settlement proposal.

Mr. Gonzalez filed a petition pursuant to Chapter 7 of the Bankruptcy Code on March 22, 2002.

Prior to the bankruptcy filing, Mr. Gonzalez provided Caterpillar with his 1996 tax return and most of Universal's books and records. These documents showed that Universal's inventory levels were usually below $400,000 from 1989 through 1996. Only at the end of 1996 and the beginning of 1997 did Universal's inventory levels exceed $400,000 and that was only by $22,000.

Following the bankruptcy filing, Mr. Gonzalez provided Caterpillar with his tax returns for 1997 and with his joint returns for 1998 through and including 2001. In addition, Mr. Gonzalez provided Caterpillar with bank statements from January 1, 1998, through the filing date. These statements showed the deposits by Mr. Gonzalez of both his salary payments from CESI and the payments from CESI on account of the sale of Universal's assets to CESI.

Caterpillar filed an adversary complaint which seeks to deny Mr. Gonzalez a discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5). A trial was held and the matter was taken under advisement. Both parties submitted proposed findings of fact and conclusions of law.

 A discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. *In re Garman,* 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). Consequently, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start. *In re Johnson,* 98 B.R. 359, 364 (Bankr.N.D.Ill.1988) (citation omitted). Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt nondischargeable. *See Johnson, supra,* 98 B.R. at 367 ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.") (citation omitted). The plaintiff has the burden of proving the objection. *See* Fed. R.Bankr.P. 4005; *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983) (the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff). The objector must establish all elements by a preponderance of the evidence. *In re Scott,* 172 F.3d 959, 966–67 (7th Cir.1999).

Pursuant to 11 U.S.C. § 727(a)(2)(A), a court will grant a debtor a discharge unless the plaintiff can prove by a preponderance of the evidence that the debtor:

(2) with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition . . .

11 U.S.C. § 727(a)(2)(A).

 Denial of discharge under this section requires proof of actual intent to hinder, delay or defraud a creditor. *In re Snyder,* 152 F.3d 596, 601 (7th Cir.1998); *In re Krehl,* 86 F.3d 737, 743 (7th Cir. 1996); *In re Smiley,* 864 F.2d 562, 566 (7th Cir.1989). "[P]roof of harm is not a required element of a cause of action under Section 727." *Id. at* 569. In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's "whole pattern of conduct." *In re Ratner,* 132 B.R. 728, 731 (N.D.Ill.1991) (*quoting In re Reed,* 700 F.2d 986 (5th Cir.1983)). The issue of a

debtor's intent is a question of fact to be determined by the bankruptcy judge. *See Smiley, supra,* 864 F.2d at 566. Actual fraudulent intent can be inferred from extrinsic evidence. *Id.; Krehl, supra,* 86 F.3d at 743; *In re White,* 63 B.R. 742, 744 (Bankr.N.D.Ill.1986) ("a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case"). "Thus, where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." *Krehl, supra,* 86 F.3d at 744 (citation omitted). "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998) (citations omitted).

■ In order to prevail against the Debtor on its § 727(a)(2)(A) claim, the Plaintiff must prove two things: (a) assets of Universal were transferred, removed, destroyed, mutilated, or concealed, and, if proven, (b) that the Debtor had an intent to hinder, delay, or defraud his creditors.

It is undisputed that Mr. Gonzalez transferred the assets of Universal to CESI in December, 1997, and that Mr. Gonzalez did not file his bankruptcy petition until March 20, 2002. Thus, the transfer did not take place within the one year specified by § 727(a)(2)(A). Caterpillar attempts to circumvent the one-year limitation by arguing that Mr. Gonzalez concealed assets within the year preceding the bankruptcy filing. The evidence did not support this argument.

■ The discharge may be denied under § 727(a)(2)(A) where a debtor conceals the fact that he transferred an asset more than one year prior to filing bankruptcy and the concealment continues into the one year period. *In re Hall,* 126 B.R. 117 (Bankr.M.D.Fla.1991). Concealment may be accomplished in two ways: the debtor may conceal the transfer by actively misleading an interested party into thinking it did not occur, or by a sham transfer where title to the property is transferred by the benefits of ownership are retained. *Id.; In re Sausser,* 159 B.R. 352, 356 (Bankr.M.D.Fla.1993).

■ The evidence demonstrated that Caterpillar had actual knowledge of the sale of Universal's assets to CESI no later than June 28, 1999, when Mr. Gonzalez discussed the transfer in a deposition in the infringement case. Caterpillar even added CESI as a party to the infringement case after the deposition. Moreover, because Caterpillar had actual knowledge of the transfer more than one year prior to the filing of the bankruptcy petition, Caterpillar cannot prevail even if it was a sham transaction with Mr. Gonzalez retaining all of the benefits of ownership. *In re Wolmer,* 57 B.R. 128 (Bankr.N.D.Ill. 1986).

In any event, the Court finds that the transfer of Universal's assets to CESI was not a sham transaction designed to defraud creditors. Mr. Gonzalez testified that Universal's business was trashed as a result of the litigation with Caterpillar. Mr. Gonzalez was credible when he testified that he concluded at the end of 1997 that he could no longer operate Universal profitably.

The evidence indicated that the transfer was for fair market value. The value of $393,000 assigned to Universal's inventory was consistent with the inventory levels at years' end for Universal over the years before it closed down.

The evidence further shows that CESI actually paid the sale price to Mr. Gonza-

lez. What Mr. Gonzalez actually did with these funds will be addressed in the Court's discussion of § 727(a)(5).

Universal sold its assets to CESI, a separate legal entity. CESI was created as a separate corporation. CESI maintained its own bank accounts, had its own books and records, and followed the basic corporate formalities of a separate legal entity. All decisions of CESI were made by Mrs. Gonzalez. Mrs. Gonzalez was the sole shareholder of CESI since CESI started business in January, 1998. The evidence did not support Caterpillar's suggestion that Mr. Gonzalez exercised effective control over CESI.

CESI was not a mere continuation of Universal. Although it operated the same kind of business out of the same warehouse as Universal, at least 50% of CESI's customers were different from Universal's. CESI also had different suppliers than Universal.

In sum, the Court finds that Universal's assets were transferred to CESI more than a year prior to the bankruptcy filing, that the transfer was not concealed, and that the transfer was for fair market value. Caterpillar has not carried its burden on its § 727(a)(2)(A) claim.

Section 727(a)(3) of the Bankruptcy Code provides as follows:

(a) the court shall grant the debtor a discharge unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justi-

fied under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

■ A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving (i) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *In re Sadler,* 282 B.R. 254 (Bankr.M.D.Fla.2002).

The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "sufficiently identify the transactions [so] that intelligent inquiry can be made of them." The test if whether "there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past[,] may be ascertained."

*Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3rd Cir.1992) (citations omitted).

■ It is undisputed that Mr. Gonzalez destroyed Universal's books and records from 1989 to 1997 in 1999. Caterpillar argues that this action made it impossible for Caterpillar to determine the financial condition of Mr. Gonzalez as of the bankruptcy filing of March 20, 2002, or to determine whether Universal's assets were transferred to CESI for fair value.

When Mr. Gonzalez destroyed the records of Universal, the business had been shut down for almost two years and the IRS had completed its audit of Universal. Another two and a half years would pass before Mr. Gonzalez would file his bankruptcy petition. More importantly, Mr. Gonzalez had been in litigation with Cater-

pillar for six years at the time the records were destroyed. During the course of this litigation, Caterpillar had obtained almost all of Mr. Gonzalez' records from 1989 through 1997, with the possible exception of a seven-month period between May 1997 and December 1997. In the course of this proceeding, Mr. Gonzalez produced his 1997 tax return which, together with the 1996 tax return, adequately showed Universal's inventory levels for those years. Under these circumstances, the Court finds that Caterpillar had sufficient documents in its possession to allow it to establish the value of the assets transferred by Mr. Gonzalez.

Section 727(a)(4)(A) of the Bankruptcy Code provides as follows:

(a) The court shall grant the debtor a discharge unless–

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account(.)

■■■ The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. *In re Carlson,* 231 B.R. 640, 655 (Bankr.N.D.Ill. 1999), *aff'd* 250 B.R. 366 (N.D.Ill.2000), *aff'd* 263 F.3d 748 (7th Cir.2001). In order to prevail under § 727(a)(4), the Plaintiff must establish five elements: (1) the Defendants made a statement under oath; (2) the statement was false; (3) the Defendants knew that the statement was false; (4) the Defendants made the statement with intent to deceive, and (5) the statement related materially to the bankruptcy case. *In re Bailey,* 147 B.R. 157, 163 (Bankr.N.D.Ill.1992). If made with the requisite fraudulent intent, a false statement, whether made in the schedules or orally at a § 341 creditors' meeting, is sufficient grounds for denying a discharge

provided it was knowingly made and is material. *In re Lunday,* 100 B.R. 502, 508 (Bankr.D.N.D.1989). It is a debtor's role to consider the questions posed on the schedules and at the creditors' meeting carefully and answer them accurately and completely. *Id.*

■■■ A debtor's petition and schedules constitute a statement under oath for purposes of a discharge objection under § 727(a)(4). *In re Gannon,* 173 B.R. 313, 320 (Bankr.S.D.N.Y.1994). In addition, a debtor's testimony at the meeting of creditors is under oath. Thus, the Plaintiff has established that Mr. Gonzalez made a statement under oath.

■■■ Caterpillar notes that Mr. Gonzalez stated in his Form 7 filing that he received $63,000 in the two year period preceding the filing date. Mr. Gonzalez admits that he actually received $129,701.24 during this period. Mr. Gonzalez testified that this error was the result of an honest mistake; he was under the impression that the information sought was the amount received in the two calendar years preceding the filing rather than the two year period preceding the filing. The Court finds this to be a credible explanation. Mr. Gonzalez did not knowingly intend to defraud his creditors. *See In re Yonikus,* 974 F.2d 901, 905 (7th Cir.1992).

■■■ Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless... the debtor has failed to explain satisfactorily... any loss of assets or deficiency of assets to meet the debtor's liabilities...." 11 U.S.C. § 727(a)(5). "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Martin, supra,* 698 F.2d at 886 (citations omitted). There are two stages of

proof with respect to § 727(a)(5). *In re Bryson*, 187 B.R. 939, 955 (Bankr.N.D.Ill. 1995). First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. *Id.* (citations omitted). Second, if the party objecting to the discharge meets its burden, then the debtor is obligated to provide a satisfactory explanation for the loss. *Id.* (citation omitted).

What constitutes a "satisfactory" explanation for § 727(a)(5) purposes is left to the discretion of the court. *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir.1966); *In re Potter*, 88 B.R. 843, 849 (Bankr.N.D.Ill.1988). The debtor's explanation, however, must consist of more than "a vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Baum, supra*, 359 F.2d at 814. Instead, "it must be a good faith explanation of what really happened to the assets in question." *Potter, supra*, 88 B.R. at 849. "To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *In re Martin, supra*, 141 B.R. 986, 999 (Bankr. N.D.Ill.1992) (citations omitted). A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *Johnson supra*, 98 B.R. at 366 (*quoting Martin, supra*, 698 F.2d at 888).

Mr. Gonzalez received over $400,000 for the sale of Universal's assets to CESI. These funds were paid to him over the next four years. At issue here is whether Mr. Gonzalez satisfactorily explained what happened to these funds.

As noted above, Mr. Gonzalez is married to Maritza Gonzalez. They have four children. The oldest is 22 years old and a senior in college. The Gonzalez' are paying for his college expenses. Another child is now a freshman in college. Mrs. Gonzalez is paying of most of his college expenses due to Mr. Gonzalez' diminished income. The two youngest children, ages 10 and 12, are in private school.

In addition to spending money on the education of his four children, Mr. Gonzalez testified that the money was used for the normal living expenses of the family. Mr. Gonzalez produced the check register to show where the money went. Caterpillar notes that the register shows that $242,000 went to credit cards, $65,000 on ATM withdrawals, and $33,000 on "gifts & misc.". These expenses were incurred over a four year period. Caterpillar complains that Mr. Gonzalez could not provide any greater detail. Caterpillar's real complaint, however, is that Mr. Gonzalez chose to pay any bill before he paid off Caterpillar's $170,000 debt. The Court does not find it surprising that Mr. Gonzalez would pay normal family expenses before paying any money to his nemesis, Caterpillar, the company that he blames for putting Universal out of business. The Court finds that Mr. Gonzalez provided an adequate explanation for what happened to the money that he received form the sale of Universal's assets to CESI.

For the foregoing reasons, the Complaint objecting to the discharge of Mr. Gonzalez is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that Caterpillar, Inc.'s Complaint objecting to the discharge of Angel L. Gonzalez be and is hereby denied.