[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 3, 2009
THOMAS K. KAHN
CLERK

No. 09-11854
Non-Argument Calendar

_____

D. C. Docket No. 08-81332-CV-CMA,
BKCY No. 06-1592-BKC-PGH

In Re:   JAMES M. COADY,

Debtor.

_____

JAMES M. COADY,

Plaintiff-Appellant,

versus

D.A.N. JOINT VENTURE III, L.P.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 3, 2009)

Before BLACK, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

In 2005, James Coady filed a voluntary bankruptcy petition under Title 11, Chapter 7 of the United States Code. In 2006, D.A.N. Joint Venture III, L.P. ("D.A.N. III") initiated an adversary proceeding to contest the discharge of Coady's debts under 11 U.S.C. § 727(a)(2)(A). In 2008, the bankruptcy court granted D.A.N. III's motion for "an order correcting the name of the Plaintiff" to D.A.N. Joint Venture, L.P. ("D.A.N.") and entered a final judgment sustaining D.A.N.'s objection to discharge.[1] The district court affirmed the bankruptcy court's orders in their entirety, and Coady now appeals.

## I. BACKGROUND

This case arises from D.A.N.'s attempts to recover as the assignee of a 1991 judgment for $290,000 entered against Coady in Connecticut. Coady had formerly been a successful real estate developer with a net worth of approximately $10 million, but an economic downturn left him $27 million in debt. While so indebted, Coady married, moved into his wife's house, drove a car leased in her

---

[1] D.A.N. III also filed a § 727(a)(3) objection, which the bankruptcy court overruled, but D.A.N. has not appealed to this court, and we therefore need not address the merits of that objection.

name, and for over ten years worked exclusively as an "uncompensated independent contractor" for business entities under her sole ownership. He drew no salary,[2] but his wife allowed him to write checks in her name on the businesses' accounts to pay personal expenses. She also paid for his country club and golf club memberships, the latter of which he used to promote a golf consulting and marketing business that she owned. Although Coady had neither income nor an individual bank account, in 1999 he personally executed a $164,000 promissory note to fund a real estate development for one of the businesses.

In 2004, D.A.N. sued Coady in Connecticut to recover the $290,000 judgment. Coady filed his petition for bankruptcy in Florida before the conclusion of those proceedings. Even though D.A.N. was the assignee of the underlying judgment, D.A.N. III, one of D.A.N.'s related entities, initiated this adversary proceeding, claiming that Coady had "concealed" an equitable interest in his wife's businesses under § 727(a)(2)(A) of the Bankruptcy Code, which provides:

> The court shall grant the debtor a discharge, unless— . . .
>     (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

---

[2] Coady did apparently receive $5,000 per month in consulting fees from one of the businesses in 2005.

(A) property of the debtor, within one year before the date of the
filing of the petition . . . .

11 U.S.C. § 727(a). Coady appeals the denial of his discharge under this section.

## II. STANDARD OF REVIEW

In bankruptcy appeals, we independently examine the bankruptcy court's factual and legal determinations, applying the same standards of review as the district court. *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990). We therefore review the bankruptcy court's factual findings for clear error and its resolution of any legal questions *de novo*. *Id.* "The Bankruptcy Code favors discharge," but "[t]he general policy that provisions denying such a discharge are construed liberally in favor of the debtor and strictly against the creditor applies only to the honest debtor." *In re Jennings*, 533 F.3d 1333, 1338–39 (11th Cir. 2008) (citing *In re St. Laurent*, 991 F.2d 672, 680 (11th Cir. 1993)).

## III. DISCUSSION

On appeal, Coady denies that he had any equitable interest in his wife's property and argues, in any event, that such an interest could not constitute "property of the debtor" under § 727(a)(2)(A). He also contends that he could not have "concealed" assets from D.A.N. within the one-year look-back period of § 727(a)(2)(A) because D.A.N. had already learned about his alleged equitable

4

interests during the Connecticut litigation. Finally, Coady challenges various orders of the bankruptcy court giving D.A.N. III additional time to file its first complaint, allowing it to file three amended complaints, and allowing it to "substitute" D.A.N. as the plaintiff.

We agree with the district court that the bankruptcy court correctly denied Coady's discharge.

> To successfully object to a discharge under § 727(a)(2)(A), a creditor must establish (1) that the act complained of was done within one year prior to the date the petition was filed, (2) with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted [of] transferring, removing, destroying, or concealing any of the debtor's property.

*Jennings*, 533 F.3d at 1339. The bankruptcy court found that Coady had, with the intent to shield assets from his creditors, diverted the fruits of his labor to increase the value of his wife's businesses and then used business assets to support his personal lifestyle. Coady has identified no clear error in these factual findings, and we see none.

We reject Coady's argument that diverting the fruits of his labor to avoid acquiring assets was not a transfer or concealment under § 727(a)(2). Coady "was the sole person actually and actively involved in the [businesses,] and [their] success depended solely on his continued efforts." *In re Frumovitz*, 10 B.R. 61,

5

66 (Bankr. S.D. Fla. 1981) (denying discharge). He devoted his time and talents to increasing the businesses' value, but "whatever increase in equity [came] about in the future through [his] labor [would] be protected from his creditors, while being available for his benefit or to fulfill his legal obligations of support for his family." *Id.*[3] Moreover, Coady's personal use of business accounts, along with his wife's financial support, replaced any regular compensation that might otherwise have been available to satisfy his creditors' claims. Through this arrangement, Coady acquired and concealed an equitable interest in his wife's businesses. *Cf. In re Ogalin*, 303 B.R. 552, 558 (Bankr. D. Conn. 2004) (denying discharge where "there was an attempt to frustrate [the debtor's] creditors by diverting the fruits of his industry to . . . family members, who then provided him with the use and enjoyment of material comforts purchased with those fruits").

Coady also challenges the bankruptcy court's conclusion that an equitable interest in businesses he never legally owned could constitute "property of the debtor" within the scope of § 727(a)(2)(A). The bankruptcy estate, however, broadly includes "all legal or equitable interests of the debtor in property as of the

---

[3] Coady argues that he added no value to the businesses, but even worthless assets may not be concealed from creditors in bankruptcy. *Cf. In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. . . . Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.").

commencement of the case." 11 U.S.C. § 541(a)(1). Equitable interests may more typically be retained following a legal transfer than acquired through other means, *see, e.g.*, *In re Espino*, 48 B.R. 232, 236 (Bankr. S.D. Fla. 1985) ("The Debtor must retain control or reap a substantial equitable interest from the transfer."), but nothing in the Bankruptcy Code prescribes a definition of equitable interests limited solely to those "retained." Significantly, § 727(a)(2) does not require a transfer at all; on the contrary, it refers to the transfer *or* concealment of assets, and "the atypical structure of the concealment alleged here is not reason alone to absolve the Debtor of concealment in the one-year pre-petition period." *Ogalin*, 303 B.R. at 558; *cf. In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983) ("Fraudulent acts are as varied as the fish in the sea.").[4]

We are similarly unpersuaded by Coady's argument that he could not have concealed assets from a creditor who knew of their existence more than a year before the petition was filed. The doctrine of continuing concealment provides for situations like this, in which a debtor has kept his assets out of a creditor's reach during the look-back period by means of a sham ownership arrangement established more than one year before the bankruptcy petition was filed. *See In re*

---

[4] We also note that Coady *personally* executed the $164,000 promissory note for the benefit of one of his wife's businesses, and we would ordinarily expect such a transaction to give him some interest in the company's assets, as either a lender or a contributor of capital.

7

*Gonzalez*, 302 B.R. 745, 752 (Bankr. S.D. Fla. 2003).  To allow a debtor to reap the rewards of his continuing efforts to evade creditors because they learned before the look-back period of the property on which they could not levy execution would rob the continuing concealment doctrine of its force.

Finally, we reject Coady's arguments concerning the bankruptcy court's alleged procedural errors.  We review that court's rulings on motions for an extension of time to object to discharge, motions for leave to amend, and motions to substitute the plaintiff for an abuse of discretion.  *See In re Ballas*, 342 B.R. 853, 856 (Bankr. M.D. Fla. 2005) (extension of time); *In re Verilink Corp.*, 410 B.R. 697, 700–01 (N.D. Ala. 2009) (leave to amend); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121, 1132 (11th Cir. 2004) (substitution).  For the reasons stated in the district court's thorough discussion of these procedural issues, we cannot conclude on the record before us that the bankruptcy court abused its discretion.[5]

---

[5] With respect to the substitution of D.A.N. for D.A.N. III as the plaintiff, Coady has not included in the record on appeal a transcript of the bankruptcy court's hearing on D.A.N. III's motion to "correct" its name.  We will not speculate as to potential errors in the bankruptcy court's findings or conclusions when the appellant has failed to include the relevant evidence in the record. *McGinnis v. Gustafson*, 978 F.2d 1199, 1201 (10th Cir. 1992); *see also* Fed. R. App. P. 10(b)(2).

In light of our conclusion that the bankruptcy court did not err in denying Coady's discharge under § 727(a)(2)(A) or abuse its discretion otherwise, the district court's order is

**AFFIRMED.**