[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10776
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00872-ECM
Bkcy. No. 16-bk-10168

JOHN C. TOMBERLIN,

                                                        Plaintiff-Appellant,

versus

MULTIBANK 2009-1 CML-ADM VENTURE, LLC,

                                                        Defendant,

NCP BAYOU 2, LLC,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 5, 2021)

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

John Tomberlin was deeply in debt.  In 2014, an Ohio court entered a judgment against him for more than $20,000,000, after he had defaulted on a loan to Multibank (successor-in-interest to appellee, NCP Bayou 2).  And, to make matters worse, the IRS had been after him for years to pay more than $306,000 in unpaid taxes (including interest and penalties).  So in 2015, when the IRS levied against his personal bank accounts, Tomberlin found himself in a difficult situation.  If he continued to deposit his income into his personal accounts, he worried that the IRS would again garnish those funds, leaving him with nothing to pay his bills, much less his creditors.  So with the advice of counsel, he started to use the corporate bank account of a business he owned—South Alabama Diagnostic Imaging, PC (SADI)—as his personal checking account.  He deposited his salary into that account and withdrew funds from it to pay his phone bills, insurance premiums, mortgage, and credit cards.

Though this allowed Tomberlin to "get-by financially" while he prepared to file for bankruptcy, the bankruptcy court later determined that this action also disqualified him from having his indebtedness discharged under 11 U.S.C. § 727. Tomberlin unsuccessfully appealed that decision to the district court, and he now asks us to reverse the bankruptcy court's order.

2

In an appeal from a bankruptcy proceeding, we "independently examine the bankruptcy court's factual and legal determinations, applying the same standards of review as the district court." *In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009). That means we "review the bankruptcy court's factual findings for clear error and its resolution of any legal questions *de novo*." *Id.*

Debtors who file for Chapter 7 bankruptcy are offered an opportunity at a "fresh start"—a discharge of their debts—as long as they abide by certain rules. *In re Mitchell*, 633 F.3d 1319, 1326 (11th Cir. 2011). That is, under § 727(a)(2)(A), the bankruptcy court "shall grant the debtor a discharge, *unless*" the "debtor, with intent to hinder, delay, or defraud a creditor" has "transferred, removed, destroyed, mutilated, or concealed" his property "within one year before the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 727(a)(2)(A) (emphasis added). To successfully object to a discharge, a creditor must show by a preponderance of the evidence "(1) that the act complained of was done within one year prior to the date the petition was filed, (2) with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted [of] transferring, removing, destroying, or concealing any of the debtor's property." *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008).

Here, the bankruptcy court found that Tomberlin was not entitled to a discharge because he intended to hinder or delay payment to the IRS when he

3

channeled his personal income into his corporate account.  And on appeal, Tomberlin admits that the first, third, and fourth elements were established.  He argues only that he lacked the requisite intent—an argument he frames both as legal and factual.

First, the alleged legal error.  Tomberlin says that his intent—an "intent to get-by financially"—was not the type of intent Congress "considered so abusive" that it merited denial of a discharge.  He claims that he "never misrepresented or actively concealed the nature of what he was doing to or from anyone; nor did he otherwise evidence intent to deceive or mislead his creditors (particularly the IRS)."  He also says that he had no "nefarious intent to hinder or delay the IRS."  All that the evidence showed, he says, was that he "intended to prevent the IRS levying his personal funds so that he could continue operating (in a financial capacity) both professionally and personally."

Unfortunately for Tomberlin, that is all that the evidence needed to show: an intent to delay or hinder (i.e. "prevent") the IRS from levying his personal funds.  *See* 11 U.S.C. § 727(a)(2)(A).  He posits that because he had a good reason for delaying payment to the IRS—he needed to "protect" his money to "get-by financially"—that he should still be entitled to a discharge.  But even if he had logical reasons for postponing payment, it does not change the fact that he *intended* to delay the IRS's collection.  And such intent places him outside an entitlement to

4

a discharge under § 727.  *See In re Smiley*, 864 F.2d 562, 568 (7th Cir. 1989) (affirming a denial of discharge when the debtor "intended to hinder or delay his creditors, even if he had no intent to defraud them").

We also find no clear error in the bankruptcy court's factual finding that Tomberlin intended to delay or hinder the IRS.  *In re Kane*, 755 F.3d 1285, 1298 (11th Cir. 2014).  As the court observed, his own testimony made this fact abundantly clear, as he testified that he used the "SADI account instead of personal accounts as a way to 'protect' his money."  There is nothing clearly erroneous in the court's finding that using the SADI account to "'protect' the money and prevent garnishment" constituted an intent to "hinder or delay a creditor."

**AFFIRMED.**